23400. BRANNAN *v.* CITY OF BRUNSWICK.

DECIDED APRIL 4, 1934.

*Farr & Mitchell, Youngblood & Youngblood,* for plaintiff.
*R. D. Meader,* for defendant.

GUERRY, J. L. C. Brannan brought suit against the city of Brunswick and the county of Glynn for personal injuries alleged

to have been sustained by him through their negligence, by reason of which he claims damages. His petition was amended, striking therefrom all reference to the county of Glynn and proceeding against the city of Brunswick as sole defendant. A general demurrer was sustained and his petition dismissed; to which ruling he excepted. His petition makes out substantially the following case: Petitioner on February 24, 1931, and for some time prior thereto was a policeman for the city of Brunswick, "whose duties it was, *among others* (italics ours), to patrol by use of a motorcycle . . the public highway or causeway from Brunswick, Georgia, to St. Simons Island, Georgia." He was employed in the above capacity by J. E. Register, chief of police of the city of Brunswick, whose commands and instructions he was to obey. The St. Simons Island causeway "is owned and operated by the defendant as a toll-road, for the use of which tolls or fees are charged and collected by the defendant *for its own corporate purposes and as a source of corporate revenue and profit."* (Italics ours.) Petitioner, on the date of February 24, 1931, was engaged in the duty of patrolling the St. Simons Island causeway, on a motorcycle furnished to him by the defendant for that purpose, and, while performing such duty, was thrown from his motorcycle and received certain described injuries. The cause of his injury was the defective condition of the motorcycle, in that the chain on said motorcycle was loose and in a defective condition. J. E. Register, as the alter ego representative of the defendant, owed him the duties of furnishing to him a reasonably safe place to work, that is, a motorcycle that was reasonably suited for the purpose intended; of ascertaining the defective condition of such appliance and to give him warning thereof, which duties he breached. The petition further alleges that such defect was known or could have been known by the defendant by the use of ordinary care and diligence.

Do the facts as set out above constitute a good and valid cause of action against the defendant? We have given what we think was a most careful perusal and consideration to many cases and many text-books on the subject to be discussed in rendering an opinion in this case, in an effort to ascertain some clear and definite rule in regard thereto. Undoubtedly, in the present case, if the relation purely of master and servant existed between the plaintiff and the defendant at the time of the injury sustained, the petition

sets out a good cause of action, for the petition alleges that the defendant employed him, and that it had the right to direct his movements and to discharge him. It alleges further that the defendant failed to furnish him a safe appliance with which to work. It sets out facts to show reasons why the plaintiff did not know of the facts complained of and in the exercise of ordinary care could not have known of these defects, and did not have equal means with the master of knowing of such defects, and further alleges that such failure on the part of the defendant was the proximate cause of his injuries. See Civil Code (1910), § 3130. However, the defendant being a municipal corporation, to which different rules apply than those applicable to private corporations in some instances, it becomes pertinent to inquire for what acts of negligence it is liable.

Section 897 of the Civil Code of 1910 reads as follows: "Municipal corporations are not liable for failure to perform or for errors in performing their legislative or judicial powers. For neglect to perform, or for improper or unskilful performance of their ministerial duties, they are liable." In discussing the construction of this statute, Beck, J., in *Cornelisen* v. *City of Atlanta,* 146 *Ga.* 416 (91 S. E. 415), said: "The whole section should be construed together, in connection with its cognate sections, and as intending to declare that municipal liability should attach only for neglect to perform, or for improper or unskilful performance of 'ministerial duties.' This construction would leave intact the common-law doctrine, frequently applied in this State before and since the adoption of the code, of non-liability for conduct of officers, agents and servants of municipal corporations in respect to duties devolving upon them in virtue of the sovereign or governmental functions of the municipality." In *Love* v. *City of Atlanta,* 95 *Ga.* 129 (22 S. E. 29, 51 Am. St. R. 64), it was said, in discussing for what negligent acts a municipal corporation is liable: "Distinctions do not appear to have been at all times accurately drawn between the classes of cases in which a municipal corporation would be liable, and those in which it would not be liable, for the misfeasance or nonfeasance of a public servant employed under municipal authority in the discharge of duties relating to corporate affairs. One general proposition, however, seems to have received general recognition at the hands of courts of last resort wherever that class of

cases has been considered; and that class of cases is, that where an injury sustained is inflicted because of the misfeasance of an agent of a corporation while engaged in a duty pertinent to the exercise of what are termed governmental functions of a corporation, the city is not liable. Where injuries under similar circumstances are inflicted by the agent of a corporation acting for it in the discharge of a duty on behalf of a municipal corporation where it is engaged in the exercise of some private franchise, or some franchise conferred upon it by law which it may exercise for the private profit or convenience of the corporation or for the convenience of its citizens alone, in which the general public has no interest, for such injuries a right of recovery lies against the city." The court further said: "Some difficulty has arisen in the application of these general principles to the facts of particular cases which from time to time have arisen. Some difficulty has risen in the proper classification of cases in order to assign each to its appropriate position with reference to the liability or non-liability of a corporation, and the courts have not been altogether happy, nor entirely consistent at all times in this regard."

In *Mayor &c. of Savannah* v. *Jones*, 149 *Ga.* 140 (99 S. E. 294), it was said: "A municipal corporation in the exercise of its corporate functions performs two classes of service: (1) Governmental duties, and (2) private corporate, or ministerial duties. It seems to be well settled in this State that in the negligent performance of its governmental duties a municipal corporation is not liable in damages to one who is injured while the municipality is engaged in the performance of such duties. *Wright* v. *Augusta*, 78 *Ga.* 241 (6 Am. St. R. 256); *Love* v. *Atlanta*, supra (22 S. E. 29, 51 Am. St. R. 64); *Watson* v. *Atlanta*, 136 *Ga.* 370 (71 S. E. 664); *Mayor &c. of Savannah* v. *Jordan*, 142 *Ga.* 409 (83 S. E. 109, L. R. A. 1915C, 741, note, Ann. Cas. 1916C, 240); *Cornelisen* v. *Atlanta*, supra (91 S. E. 415). . . But a different rule obtains where, in the exercise, or neglect, of its ministerial duties, one is negligently injured by a municipal corporation." In Jones *v.* Williamsburg, 97 Va. 722 (34 S. E. 883, 47 L. R. A. 294), which is quoted with approval in *Mayor &c. of Dalton* v. *Wilson*, 118 *Ga.* 100 (44 S. E. 830, 98 Am. St. R. 101), it was said: "A municipal corporation has a dual character, the one public and the other private, and exercises correspondingly twofold functions, the one governmental

and legislative, and the other private and ministerial. In its public character, it acts as an agency of the State, to enable it the better to govern that portion of its people residing within the municipality; and to this end there is granted to or imposed upon it, by the charter of its creation, powers and duties to be exercised and performed exclusively for public governmental purposes. These powers are legislative and discretionary, and the municipality is exempt from liability for an injury resulting from the failure to exercise them or from their improper or negligent exercise. In its corporate or private character there are granted unto it privileges and powers to be exercised for its own private advantage, which are for public purposes in no other sense than that the public derives a common benefit from the proper discharge of the duties imposed or assumed in consideration of the privileges and powers conferred. This latter class of powers and duties are not discretionary, but ministerial and absolute; and, for an injury resulting from negligence . . , the municipality is liable in a civil action for damages, in the same manner as an individual or private corporation. The line of distinction . . is clearly drawn by the courts and text writers, and the exemption of the municipality . . in the one case, and its liability in the other for an injury resulting from negligence, firmly established."

Under this general rule the courts of Georgia have held that the operation and maintenance of fire departments and apparatus therein is a governmental function of the municipality, and therefore it was not liable for negligence of its officers or agents incident to such function. *Miller* v. *Macon,* 152 *Ga.* 648 (110 S. E. 873). There the court absolved the municipality from liability to a fireman for injuries received by reason of the negligent maintenance of a pole, which the firemen used for the purpose of descending from the second floor to the first in answer to fire alarms, and the floor upon which it rested. See also *Wright* v. *Augusta,* 78 *Ga.* 241 (6 Am. St. R. 256). Also, it was held that a city was in the exercise of a governmental function in removing "sweepings" from the streets, for the reason that such act was conducive to the good health of the community and the public at large. *Mayor &c. of Savannah* v. *Jordan,* supra. The court in that case said: "The duty of keeping the streets of a municipality free from matter which, if allowed to remain, would affect the health of the public,

is a governmental function, the exercise of which would exempt the municipality from liability to a suit for damages to an employee without fault, who is injured by reason of a defective cart in which he is hauling the 'sweepings of the streets' of such municipality, and which has been furnished him for that purpose by the agents of the municipality." In *City Council of Augusta* v. *Cleveland,* 148 *Ga.* 734 (98 S. E. 345), the court held: "The duty of a city to maintain its sewerage drainage system in a good working and sanitary condition is a governmental function. Such maintenance of a sewerage system has reference to the preservation of the public health." In *Gray* v. *Griffin,* 111 *Ga.* 361 (36 S. E. 792, 51 L. R. A. 131), it was held that the erection and maintenance of a city prison by a municipal corporation was a governmental function. Again, in *Huey* v. *Atlanta,* 8 *Ga. App.* 597 (70 S. E. 71), it was held that the operation of a system of waterworks is not such a governmental function as that a city is not liable for injuries resulting through negligence in the maintenance thereof. This gives us the general rule as laid down by our courts as to the liability of a municipal corporation for negligence and also specific application of the rule.

Although the distinction between public and private functions as affecting liability for negligence of its servants or agents is generally recognized, confusion arises when an attempt is made to determine in what capacity the municipality was acting in committing the particular tort complained of. Different rules have been formulated on this subject by both jurists and text-writers, who apply tests of whether the department in which the injury occurred was of a nature legislative or administrative, discretionary or ministerial, performed by persons whose offices were created by the legislature or the municipality, whether the department and its duties were made mandatory by the statutes of the State or were merely permissive, or whether the city received any pecuniary benefit in the operation of such department or operated it gratuitously. Such rules and tests can have no uniform application, and authorities expressly find it impossible to define any rule sufficiently exact to be of much practical use in the determination of this question. Every case must be determined under a true interpretation of the statute under which the municipality was created and under a proper conception of the powers and duties delegated to it. The

determination of the question whether the operation itself of the toll bridge in the case at bar by the'municipality, to which operation the job of the plaintiff was incidental, was a governmental or ministerial function is to us without difficulty. The petition alleges that the city operated the bridge as a source of pecuniary gain and profit for itself, which allegation we are to accept as true on demurrer. In this connection our courts have laid down rules which make such act itself ministerial. In *Cornelisen* v. *Atlanta,* supra, it was said: "Where a city maintains a park primarily for the use of the public, intended as a place of resort for pleasure and promotion of health of the public at large, its operation is in virtue of the governmental powers of the municipality, and no municipal liability would attach to the nonperformance of the duties of' the officers, agents, or servants of the city in respect to keeping the park safe for use by members of the general public. It would not affect the public character of the duties of the officers, agents, or servants of the city that a purely incidental profit might result to the city from its operation or management of the park. *But if the city, having charter authority, maintain the park primarily as a source of revenue, the duty of maintaining it in a safe condition for the use for which it is intended would be ministerial, and municipal liability would attach for breach of such duty."* (Italics ours.) Also, in *Mayor &c. of Savannah* v. *Cullens,* 38 *Ga.* 334 (95 Am. D. 398), it was held that where a city maintained a market house in which it rented stalls to vendors of marketable produce, it was liable to a person who, while attending the market as a customer at one of the stalls, stepped into a hole in the floor that the city had negligently allowed to exist, and thereby sustained injury. "A municipality performs governmental functions in the exercise of its corporate powers, because such powers are exercised by it for the benefit of the public generally, and in their exercise it represents and is an arm of the state, such as its exercise of powers pertaining to the public health and to the maintenance of charitable, penal, reformatory and similar public institutions, *but when it exercises only such powers and privileges as are peculiarly for its own benefit, or the benefit of its own citizens, or those of its immediate locality, it is acting in a strictly corporate capacity."* Lampton v. Wood, 199 Ky. 250 (250 S. W. 980). Under this rule and the allegations of the petition, we·

are convinced that the operation of the bridge by the municipality was a ministerial function. We at the same time bear in mind the decision in *Watson* v. *Atlanta*, supra, where it was held that the operation of a hospital by a municipality having authority so to operate is a governmental function, and the mere fact that the petition alleged that "in the maintenance of said Grady Hospital the City of Atlanta charged fees for patients entering therein" would not change its character as a public institution and one operated by the municipal corporation in the performance of its governmental duties; also the decision in *Cornelisen* v. *Atlanta*, supra, in which it was held that "it would not affect the public character of the duties of the officers, agents, or servants of the city that a purely incidental profit might result to the city from its operation or management of the park." These decisions in no way conflict with what we have said with reference to the maintenance and operation of the toll bridge in this case; instead they might be cited as authority for this proposition.

However, in determining whether the petition in this case sets out a cause of action against the municipality, we have not as yet reached our final destination, for we do not think that the fact that the operation of the toll bridge was a ministerial function controls the case. We have taken occasion to say this much with reference to the operation of the bridge in question because the briefs of counsel for both sides argue exclusively along this line. It was said in *Mayor &c. of Savannah* v. *Jones*, supra: "It is the character of the work done by the employees of the city and not the name of the source of their employment, or the name of the department under which they work, which fixes and determines the character of the work, and the consequent liability, or non-liability of the city for a negligent performance thereof; but it is the act itself which determines whether it is performed as a governmental or ministerial function." It is declared in the charter of the City of Brunswick that "the Commission of the City of Brunswick, Georgia, shall have the power to adopt an ordinance regulating the use of that certain public highway, running from the said city to St. Simons Island, *including that part of said highway which lies outside the corporate limits of said city as well as that which lies within said corporate limits* [italics ours], and to regulate the conduct of all

persons while on any part of said highway, and to provide penalties for the violation of such ordinance or ordinances, . . and the recorder's court of said city shall have jurisdiction to try and dispose of all prosecutions brought to said court for the violation of any such ordinance or ordinances." Ga. L. 1924, p. 459. The plaintiff in the present case was a policeman whose duty, among others, was to patrol the bridge in question. The plaintiff, under the above charter provision, was patrolling a city street, and his duties were to keep order and peace. It was his duty to look after the welfare of the public traveling upon the bridge, to preserve them from harm, to prevent disorder and to arrest offenders. No one can doubt that the general public, in going to and from different parts of the State, are vitally interested, both from a standpoint of pleasure and of self-preservation, in the safety of the roads from violators of the law. The duties of the plaintiff in the case at bar were certainly of a public character, designed for the protection of the people and the execution of the laws of the State. The fact that he was patrolling property operated by the municipality for private gain and profit would not affect the character of his act and the consequent liability of the city. It is certainly as much a governmental duty for the city to keep order over streets of the city, as it is to keep them clear of "sweepings" so as to protect the health of the public. This fact is borne out by what is said in Love v. Atlanta, supra: "In the discharge of such duties as pertain to the health department of the State, the State is acting strictly in the discharge of one of the functions of government. If the State delegate to a municipal corporation, either by general law or by particular statute, this power, and impose upon it within its limits the duty of taking such steps and such measures as may be necessary to the preservation of the public health, the municipal corporation likewise, in the discharge of such duty, is in the exercise of a purely governmental function, affecting the welfare not only of the citizens resident within its corporation but of the citizens of the commonwealth generally, all of whom have an interest in the prevention of infectious or contagious diseases at any point within the State, and in the exercise of such power is entitled to the same immunity against suit as the State itself enjoys. *Such a duty would stand upon the same footing as its duty to*

*preserve the public peace,* and its liability or non-liability would depend upon the same principle which relieves the city from liability for the misfeasance of a police officer in the discharge of his duty." As to the character of a police officer in the eyes of the law, it is said in *Cook* v. *Macon,* 54 *Ga.* 468, that "the authorities place this kind of servant on special grounds. He is a peace officer; his duties do not lie in the line of the special private duties or rights of the corporation, but they are duties connected with the public peace in which the State is interested, and in a very wide sense he is a State officer; many of his duties are duties connected with the prevention and punishment of crime."

We therefore come to the conclusion that the defendant municipality is not liable for the negligence of its chief of police in failing to furnish the plaintiff with a good motorcycle for the reason that at the time of the injury it was in the exercise of a governmental function. In arriving at this conclusion we have discovered only one authority which seems to be in conflict with that here reached. In Oklahoma City *v.* Foster, 118 Okla. 120 (247 Pac. 80, 47 A. L. R. 822), it was held: "Where a city operated a garage or repair shop for the purpose of repairing motor-vehicles used in connection with the police department, although it places the same under the control and supervision of the chief of police, it is, nevertheless, in so far as the repair and maintenance of its motor-vehicles, acting in its corporate and ministerial capacity, and where the chief of police, knowing the defective condition of a motor-vehicle, orders an officer of the city to use the same in performing his duties as a police officer, and orders the operator of the vehicle to take with him another officer not aware of the defective condition of the motor-vehicle, and because of such defective condition such other officer is injured, the city will be liable in damages for the negligence of its superintendent of garage in permitting the use of such vehicle." We are, however, able to show in many ways why that case is not acceptable as authority in the case at bar; two of these we deem sufficient. First, the court in that case, in determining the character of the act of the city, did not take into consideration the character of the *act* in which the *plaintiff* was engaged, but only considered the *act* of the city in *repairing* the vehicle, as the controlling question in determining the liability of the city; which is directly contrary to *Cornelisen* v.

*Atlanta,* supra, where it was held that the act of the plaintiff in clearing the "sweepings" from the street was an act tending to promote the health of the public, and the city was in the exercise of a governmental function in doing anything in furtherance of such act, such as repairing the wagon upon which the plaintiff rode to collect the sweepings. Secondly, authority which was cited as controlling the question in that case is directly contrary to decisions of our courts; two of these being that the city was in the exercise of ministerial duties in operating and maintaining a fire station and apparatus and in maintaining and operating a city hospital; which rulings are contrary to the rulings in *Miller* v. *Macon,* and *Watson* v. *Atlanta,* supra, respectively. We therefore are of the opinion that the court committed no error in sustaining the general demurrer to the petition and dismissing the same.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*

Broyles, C. J., concurring specially. I agree to the judgment of affirmance. However, in my opinion, the allegations of the petition, to wit, "that said . . causeway is owned and operated by the defendant as a toll-road, for the use of which tolls or fees are charged and collected by the defendant for its own corporate purposes and as a source of corporate revenue and profit," do not show that the operation of the causeway was a ministerial function. The allegations of the petition, construed most strongly against the plaintiff, and the language of the act of the General Assembly (Ga. L. 1922, p. 599, sec. 1), providing for the construction of the causeway, show that the causeway was to be built as "a public benefit to the City of Brunswick . . and its inhabitants," and that the collection of tolls was merely an *incidental* profit; and the petition fails to allege that the amounts collected for tolls were more than nominal or that they were of substantial benefit to the city.