### 28133. HOME OWNERS LOAN CORPORATION *v.* BRAZZEAL.

684

Decided May 15, 1940. Rehearing denied June 14, 1940.

*H. G. Bell, D. R. Bryan,* for plaintiff in error.

*G. G. Bower, Vance Custer,* contra.

Guerry, J.  J. J. Brazzeal filed suit in Decatur County against Mrs. T. H. Wilson and the Home Owners Loan Corporation, alleging that the principal office of the corporation was in Fulton County, Georgia, but that it had an agent, J. B. L. Barber, in

charge of "all of the real estate owned by said defendant corporation in said [Decatur] county, and the renting, repairing, and selling thereof, and is in charge of the property" causing the injuries alleged, the suit being predicated on alleged negligence of the defendants in failing to keep in repair a building owned by the corporation in Decatur County, which Mrs. Wilson occupied as tenant. On March 2, 1938, the sheriff made an entry of service of the process, as follows: "I have this day served the defendant Home Owners Loan Corporation by serving J. B. L. Barber agent in charge of defendant's office in Decatur County, Georgia, in person with a copy of the within petition and process." This suit was returnable to the May term of Decatur superior court. At the May term, 1938, the corporation filed a traverse and a special plea to the jurisdiction, in which it denied that Barber was its agent authorized to accept service in Decatur County, and alleged that it could not be legally served so as to be made a party respondent. At the same term it also filed demurrers and answers to the petition, subject to the special plea to the jurisdiction. It was prayed that the petition be served on the corporation "by its agent in said county, if found therein; and if such agent be not found within the county, by second original directed to Fulton County, Georgia." On August 5, 1938, it appearing to the court that the corporation had an office and agent in Fulton County, and that it had traversed the entry of service on Barber, who was alleged to have been its agent in Decatur County, and it appearing in the petition that the plaintiff had prayed for a second original to issue if such agent be not found in Decatur County, the court, on motion of counsel for the plaintiff, passed an order directing that a second original be issued and served on the corporation in Fulton County, Georgia. This was done, and service of the second original was perfected on August 12, 1938. At the November term of the court the corporation again filed the identical answer it had filed at the May term, reserving its rights as to the special plea to the jurisdiction.

In March, 1939, Mrs. Leila G. Brazzeal, the widow of the plaintiff, filed a petition alleging that J. J. Brazzeal died on August 9, 1938, and that she had been appointed administratrix; and she prayed that she be made a party plaintiff. At the May term, 1939, the corporation demurred to this petition and application, on the

ground that it appeared from the application that at the time the second original was served on the corporation, August 12, 1938, the plaintiff, J. J. Brazzeal, had died on August 9, 1938; and that such service was ineffectual, because there was no party plaintiff at the time of the service. This demurrer was overruled, and Mrs. Brazzeal was made a party as prayed. To this order exceptions were taken. We will consider these exceptions first. It appears that the plaintiff had the defendant corporation served by serving its alleged agent in Decatur County. An answer was made, denying that the agent served in Decatur County was in fact its agent authorized to accept service. By reason of this plea an order was taken for a second original to be issued and served on the defendant corporation in Fulton County. This second original was served on August 12, 1938. At the November term, 1938, the defendant, still reserving its rights under its plea to the jurisdiction, filed an answer to the suit as served by the second original, the answer being identical with the answer filed at the preceding May term. The administratrix filed her petition to be made a party, and the defendant, by its demurrer filed at the May term, 1939, contended that no suit was pending against it, because of the fact that at the time of the service of the second original the plaintiff was dead. It will be recalled that there was at that time before the court a service perfected on the alleged agent of the defendant corporation, to which service it had filed its traverse and plea to the jurisdiction on the ground that it was not a resident of Decatur County. The administratrix was entitled to be made a party plaintiff to any action filed by her intestate before his death. Under the Code, § 3-401, she was entitled to be made a party to the suit pending in May, 1938, and to a suit based on any second original issued in such action. The defendant, having filed its answers to every action served on it, whether in Decatur County or Fulton County, and it not appearing that it did not know of the plaintiff's death, will not now be heard to say that the entire action as to it should be dismissed. In *Rountree* v. *Lathrop*, 69 *Ga.* 539, it was said: "After regular trial in a claim case and verdict finding the property subject, it is too late for the claimant to take advantage of the fact of the death of one of the plaintiffs in fi. fa., occurring before the trial." In *Jernigan* v. *Carter*, 51 *Ga.* 232, it was held that "a plea that the plaintiff in a suit was dead at the time of the

commencement of the action may be filed at any time before judgment, *it being made to appear that the fact pleaded has just come to the knowledge of the defendant."* (Italics ours.) The defendant, having answered at the November term, was not injured by having the administratrix thereafter made a party. Moreover, it would have been error to dismiss the action; for if Barber was an agent authorized to accept service in Decatur County, as alleged in the petition, the right to make parties could not be questioned. The fact that after a suit is filed the plaintiff dies before service is perfected will not require dismissal of the suit. The right to be made a party inheres in the representative of the deceased. That was what was held in *Patrick* v. *Travelers Insurance Co.*, 48 *Ga. App.* 777 (173 S. E. 495). No special issue was made on the plea to the jurisdiction, and under the evidence the first service was good. There was no error in overruling the objection to the making of a party, or in failing to dismiss the action as to the corporation.

The petition alleged that the defendant corporation was the owner of a two-story building in Bainbridge, Georgia, known as the Wilson House, the second floor of which was maintained as a rooming-house for the accommodation of transient guests received and entertained for hire. The corporation rented a part of said building to Mrs. Wilson who operated it as a hotel. The plaintiff was a guest in said hotel on the night of November 11. The guests of the hotel parked their cars in a lot back of the hotel. There was a stairway at the back, which was used by guests in going to and coming from their parked automobiles. The plaintiff used these stairs on the morning of November 12 in going to his car; and when he stepped on the landing of the stairs, which appeared to be all right, it broke through with him, and his leg was broken, and he was caused other injuries, for which he sued. It was alleged that on several occasions before November 12 Mrs. Wilson notified J. B. L. Barber, the agent of the Home Owners Loan Corporation and in charge of the renting and repairing of this building, of its dangerous condition, and in particular as to the stair landing which caused the injuries sued for; and that such notice had been given in ample time to have such defects repaired. The plaintiff's injuries were the direct result of the defendants' negligence in failing to repair such stairway after having notice of such defects, no sign or warning having been placed to warn plaintiff

of the danger of using such stairs. It was alleged that the stairway was so constructed as to be unprotected from the weather, that it was floored with one-by-four flooring, that it had been standing in such condition for several years before the injury, and had been constructed of lumber of flimsy and inferior quality, making it susceptible of immediate deterioration, and constituting it a menace and a dangerous entrance and passageway into the building, and that Mrs. Wilson had notified the owner, the defendant corporation, of its dangerous condition many times before the date of the accident. In addition to the failure to repair, it was alleged that the defective construction of the stairway contributed to the injury. The demurrer was on the grounds, that no cause of action was set forth; that there was a misjoinder of parties and of causes of action; that the petition was multifarious; and that the defendant corporation was such an agency of the United States that a suit against it was a suit against the United States; that the United States could not be sued in a tort action, that it had not consented to be sued, and that it was not the intention of the act of Congress creating it that it should be subject to tort actions.

Was there a misjoinder of parties or causes of action? The lessee of a building in which he conducts a hotel is liable for a defective condition of the building or its appliances which causes injury to guests therein. *Bullard* v. *Rolader, 26 Ga. App.* 742 (107 S. E. 548). The Code, § 61-111, requires the landlord to keep the premises in repair; and he is liable to third persons for damages arising from defective construction or from failure to keep the premises in repair. § 61-112. Where the landlord has surrendered complete possession to the tenant, he must have knowledge of the defect, or have been notified to repair, before he becomes liable. Independent acts of negligence of several persons combining directly to produce a single injury subject each of the parties causing the independent acts to a joint suit. *Orr* v. *Dawson Telephone Co., 35 Ga. App.* 560 (133 S. E. 924). Under the allegations of the petition the lessee and the owner of the hotel could be sued jointly for the alleged acts of negligence which caused the injury to the plaintiff. These were concurring acts which may have contributed to the injury. There was no error in overruling the demurrer as to that feature.

Another ground of demurrer was that the Home Owners Loan

Corporation is such an agency of the United States Government that it may not be sued in an action of tort, and is not liable in damages for nonfeasance. The act creating the Home Owners Loan Corporation, 12 U. S. C. A. § 1463, provides that it shall be an instrumentality of the United States, "which shall have authority to sue and be sued in any court of competent jurisdiction, Federal or State." It was alleged in this petition that the Home Owners Loan Corporation was the owner of a hotel property which it had rented out and which was being used by the lessee as a hotel. If the owner in the present case were a private individual, instead of a government instrumentality, there could be no question as to its liability. If in Georgia it were a municipality, which is in itself an agent of the State, deriving its powers from the General Assembly, and such municipality engaged in acts which were not governmental, but merely ministerial, it would be liable in tort. The distinction between public and private functions, or governmental and ministerial functions, is not always clear. For a discussion of this distinction see *Brannan* v. *Brunswick*, 49 *Ga. App.* 62 (174 S. E. 186). A corporation which is granted powers to be exercised for its own private advantage, and which are for public purposes in no sense other than that the public derives a common benefit from the proper discharge of the duties imposed or assumed, may be said to be exercising ministerial duties, and is liable in civil actions for negligence the same as is a private corporation. In *Huey* v. *Atlanta*, 8 *Ga. App.* 597 (70 S. E. 71), it was held that the operation of a system of waterworks is not such a governmental function as will relieve the city from liability for injuries caused by negligent maintenance or operation thereof.

It will be noted that the act creating the Home Owners Loan Corporation, in giving to it the right to sue and be sued, did not limit it to suits on contracts or exclude torts from its operation. 12 U. S. C. A., § 1463. The Supreme Court of the United States, in the recent decision (written by Mr. Justice Frankfurter) of Keifer *v.* R. F. C., 306 U. S. 381 (59 Sup. Ct. 516, 83 L. ed. 784, 814), that "Federal agencies or instrumentalities do not acquire the government's immunity from suit merely because they do its work;" and that "the fact that, in consenting to suits against a corporation created by it, Congress consents simply 'to suits' without qualification, does not restrict suits against the corporation to

suits on contracts not sounding in tort; but such consent will be liberally construed to authorize the bringing of suits against the corporation without regard to irrelevant procedural factors, such as the distinction between tort and contract actions." As to whether Congress intended to limit suits to contracts and exclude torts, we quote from the opinion (306 U. S. 381, 395) as follows: "To assume that Congress in subjecting these recently created governmental corporations to suit meant to enmesh them in these procedural entanglements, would do violence to Congressional purpose. When it chose to do so, Congress knew well enough how to restrict its consent to suits sounding only in contract, even with all the controversies in recondite procedural learning that this might entail . . it ought not to be assumed that when Congress consented 'to suit' without qualification, the effect is the same. as though it had written 'in suits on contract, express or implied, in cases not sounding in tort.' No such distinction was made by Congress, and no such interpolation into statutes has been made in cases affecting government corporations incorporated under State law or that of the District of Columbia." In Pennell v. Home Owners Loan Corporation, 21 Fed. Supp. 497, it was expressly held that this defendant was subject to an action sounding in tort. The court said: "When the United States enters into commercial business it abandons its sovereign capacity and should be treated like any other corporation." Supporting this holding see Herman v. Home Owners Loan Cor., 120 N. J. L. 437 (200 Atl. 742) (affirmed, 122 N. J. L. 94, 4 Atl. 2d, 281); Schiff v. Home Owners Loan Cor., 168 Misc. 498 (5 N. Y. Supp. 2d, 298); Gillen v. Home Owners Loan Cor., 255 App. Div. 631 (8 N. Y. Supp. 2d, 945). In the Gillen case the reasoning of the Georgia decisions was followed, and it was said that since the corporation in managing and leasing property was not acting solely as an agency of the government, but such acts were duties essentially private and proprietary, it became liable in tort. A ruling to the contrary is that of Schevitzky v. Home Owners Loan Cor., 26 Fed. Supp. 311, which, however, was decided previously to the holding in the Keifer case, cited above; and what was there said in effect overruled the reasoning followed in the Schevitzky case. The demurrer on this point was properly overruled. The petition as a whole set out a cause of action, and there was no error in overruling the general and special demurrers interposed thereto.

The evidence failed to disclose that Mrs. Wilson notified the Home Owners Loan Corporation of any alleged defects. On the contrary it is affirmatively shown that no such notice was given by the lessee to the lessor. It does appear, however, from the evidence that the defendant made constant inspection of the building and the stairway, and that such inspection was made by two or more separate agents employed for that purpose, and that they found no apparent defects in said stairway landing. One of these witnesses, who made an inspection two weeks before the injury, testified that the underside of the landing appeared to be waterstained. The plaintiff introduced in evidence two boards or planks which, it was testified, were a part of the flooring which broke through and caused the injury. While the petition alleged that Mrs. Wilson rented the building from the Home Owners Loan Corporation, and that Mrs. Wilson discovered the defect and notified the owner in time for repairs to be made, and the proof failed to substantiate this last allegation, it was shown by the evidence that the Home Owners Loan Corporation did in fact make constant inspection of the stairway, one witness testifying that his duties as an employee of the owner required twelve inspections of the property inside of three years. Some of these inspections were made in June, some in August, and the last two weeks before the accident in November. We think this evidence was sufficient to show that the defendant had notice of any defects which would or could have been discovered by the use of ordinary care in making such inspections. The defendant made a motion for nonsuit when the plaintiff rested his case. Although it might have been proper for the court to sustain such motion when it was made, the subsequent proof brought out the facts above outlined, and under such circumstances it has been held not error requiring a reversal to overrule the motion for nonsuit. *Rice* v. *Ware*, 3 *Ga. App.* 573 (1-*a*) (60 S. E. 301). If the landlord did inspect, and such inspection by the use of ordinary care would have disclosed the defect complained of, it may be said to have had notice thereof. It appeared from the evidence that the downstairs of this building was occupied by other tenants of the landlord, and that Mrs. Wilson did not have the entire upstairs portion thereof, but that part of it was occupied by still another tenant.

The contract introduced in evidence, in addition to holding the

landlord harmless as to any claims or suits caused by the "condition of the premises," retained in the landlord the right to inspect and repair to keep the premises in "tenantable condition." We think this contract reserved to the landlord a qualified possession of the premises for the purpose of keeping it in good repair, and the evidence showed that it made regular and systematic inspection. As was said in *Crossgrove* v. *Atlantic Coast Line R. Co.,* 30 *Ga. App.* 462, (2-a), 464 (118 S. E. 694) the owner "may be held liable for injuries arising from failure to maintain the building in proper repair, even without actual notice of the defect, if, in the exercise of ordinary care, he should have known of it." "Notice of a defect, given by the tenant to the landlord, charges the landlord with notice of any and all other defects such as might reasonably have been discovered by a compliance with such a request for repairs." *Godard* v. *Peavy,* 32 *Ga. App.* 121 (2) (122 S. E. 634); *Stack* v. *Harris,* 111 *Ga.* 149 (36 S. E. 615). Whether or not the owner was under the duty to inspect for latent defects in the present case, having actually made such inspection it was under the duty to make such repairs as may have been called for by the knowledge so obtained. Whether it obtained this knowledge by a notice from the tenant became immaterial when it was shown that it knew or could have known for itself all that the tenant may have disclosed to it. The case resolved itself to one issue, and that was whether or not the Home Owners Loan Corporation, in making the inspections it did make, exercised ordinary care as to discovering the defective condition of the flooring. The jury had before it pieces of the flooring, identified by the plaintiff's evidence. The floor on the landing which gave way was eight or ten feet from the ground, could easily be seen, and was seen as a matter of fact. One of the inspectors discovered that it was "water-stained." While it had been rebuilt three years before the injury, it was exposed to the weather. The fact that the floor did break through when used in the ordinary manner by the plaintiff, together with the fact of its condition as shown by the exhibits and openness of the inspection, made it a jury question as to whether or not its defective condition could have been known to the owner by the exercise of ordinary care. The jury were authorized so to find.

The remaining assignments of error need not be discussed as

none would require a reversal. The court did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*

### ON MOTION FOR REHEARING.

PER CURIAM. After a careful consideration of the grounds of the motion for a rehearing, it is overruled.

*Broyles, C. J., and MacIntyre, J., concur. Gardner, J., disqualified.*