## A93A2126. SMITH v. HOUSING AUTHORITY OF THE CITY OF ATHENS.
### (441 SE2d 847)

SMITH, Judge.

On April 7, 1991, several concrete blocks fell from a privacy screen wall beside the porch of an apartment unit owned by the Athens Housing Authority. Smith, the sister and guest of the apartment's tenant, brought this action as next friend of her six-year-old son, who was struck and injured by the blocks. The Authority's motion for summary judgment was granted by the trial court, and Smith appeals.

Because Smith and her child were guests of a tenant, they occupied the status of invitees on the premises, and OCGA § 51-3-1 provides the applicable standard of care. *Winchester v. Sun Valley-Atlanta Assoc.,* 206 Ga. App. 140, 141 (2) (424 SE2d 85) (1992). A defendant may prevail in a motion for summary judgment by showing that there is no evidence sufficient to create a jury issue on at least one element of the plaintiff's case, regardless of disputes of fact which may exist as to other elements. *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991). Smith's theory of liability is composed of three elements: first, that the Authority maintained a dangerous condition on its premises; second, that Smith was injured by this condition; and third, that the Authority possessed superior knowledge of the dangerous condition. *Wittenberg v. 450 Capitol Assoc.,* 207 Ga. App. 260, 262-263 (427 SE2d 547) (1993).

The Authority's director of maintenance testified by affidavit that the wall was inspected shortly after the incident, that the mortar joint itself was intact and of good quality, and that the blocks appeared to have been pulled loose by force. Smith's sister, the tenant, agreed that Authority employees examined the wall two or three days after the occurrence. In contrast, the architect who executed an affidavit on behalf of Smith did not inspect the premises until October 31, 1992, about one-and-one-half years after the incident. His affidavit states that he inspected the walls at the site of the incident and at several neighboring buildings. He concluded that a design defect was apparent in the walls at the time of his observations, because runoff from the roof comes in contact with mortar joints and "causes a steady deterioration of those joints, and eventual collapse of the concrete masonry units." He further testified that "[t]here is a clear discoloration at the point where rain falls from the roof on to the wall.

This is the point where the structural collapse occurred at each building." However, Smith's architect did not state that the defect in design was such that patent deterioration would necessarily have been visible by the time of the incident in issue here. He could only state that the deterioration had become apparent by the time of his visit, one-and-one-half years later.

While the trial court granted summary judgment on the issue of "proximate cause," a summary judgment right for any reason will be affirmed. *Newsome v. Dept. of Human Resources*, 199 Ga. App. 419, 423 (3) (405 SE2d 61) (1991). The evidence on the record does not create a jury issue on at least one essential element of Smith's cause of action: superior knowledge of a defective condition on the part of the Authority. "The true ground of liability is the landowner's superior knowledge of the perilous condition and the danger therefrom to persons coming upon the property. It is when the perilous condition is known to the owner and not known to the person injured that a recovery is permitted." (Citations and punctuation omitted.) *Winchester*, supra, 206 Ga. App. at 141.

The director of maintenance testified that the Authority had no actual knowledge of any problem with the wall. The Authority inspected the premises on February 1, 1991, about two months before the incident, and noted no problem with the wall. Smith's sister acknowledged that she never reported any problem with the wall to the Authority. Smith's architect inspected the premises approximately one-and-one-half years after the incident, and he did not offer any opinion as to when the deterioration resulting from the allegedly defective condition he described would have become apparent. "[A]lthough ordinarily questions of negligence do not lend themselves to summary adjudication, 'nevertheless the classic rules of negligence still apply in this state. These rules impose liability only where the landlord has actual or constructive superior knowledge. To say otherwise would be to impose absolute liability upon landlords for all defective conditions which could have been repaired before the injury.'" (Punctuation omitted.) *Harris v. Sloan*, 199 Ga. App. 340, 341 (1) (405 SE2d 68) (1991).

Smith alleges there were other incidents involving "falling walls at the apartments," and she contends the Authority should have known of the hazard. However, both Smith and her sister testified that they knew of no other similar incidents. An affidavit from another tenant stated there were several blocks of a different design in a wall outside her apartment. That tenant was not present at the time the blocks were installed. She did not know whether those blocks were part of the original construction or why they replaced original blocks, if in fact they were installed at some later time. Likewise, Smith testified that she saw other walls from which blocks were miss-

ing, but she did not know how, when or why this had occurred. Neither Smith's testimony nor the other tenant's affidavit establishes that the absence or replacement of blocks in other walls was due to any hazard or defect or, more particularly, to the defect described by Smith's architect. For a prior incident to put a landlord on notice of a defect, the facts must be sufficiently similar to those underlying this action. "While the relevancy of other occurrences is ordinarily within the sound discretion of the court, it is necessary that the conditions of the things compared be substantially similar. Without a showing of substantial similarity, the evidence is irrelevant as a matter of law and there is nothing upon which the court's discretion can operate." (Citations and punctuation omitted.) *Wittenberg v. 450 Capitol Assoc.*, supra, 207 Ga. App. at 263 (previous incident in which another person walked into and broke glass panel in same doorway not sufficiently similar). There is no evidence to demonstrate whether missing or different blocks in other walls were in that state because of original construction, alteration, vandalism, collision with the wall, or the deterioration described by Smith's architect. There is no showing of substantial similarity sufficient to put the Authority on notice of an alleged defect common to all walls prior to the incident in question.

Moreover, " '[t]here is no obligation to protect the invitee against dangers or hazards which are known to him or which are so obvious and apparent he may reasonably be expected to discover them.' [Cit.]" *Wittenberg*, supra, 207 Ga. App. at 263. While the child himself was not deposed, Smith testified that she visited her sister with her children, "just about every other day" but testified that she never looked at the wall on the day of the incident, although she could "look right at it" from where she was sitting. Both Smith and Smith's sister testified that they knew neighbors' children had been climbing up on the wall "all the time" before the incident. Finally, Smith's sister testified that she saw cracks or gaps in the mortar between the blocks and that the blocks "looked like they was already about to fall" and were leaning off the wall for a period of about three weeks before the incident. Although Smith's sister reported numerous other problems to the Authority for repair or maintenance, she never reported the loose and leaning blocks to anyone. When the Authority last inspected the unit on February 1, 1991, about two months before the incident, no defects in the wall were noted.

At the time of the incident, Smith and her children had been at the sister's apartment for as much as "half the day." The children had been playing "just right beside" the wall, and Smith had been watching them from the sofa, for most of that time.

Given that the Smiths were almost daily visitors in the apartment, that Smith acknowledged the wall was in plain view although she did not look at it, and that the sister's testimony that the blocks

were visibly leaning and "already about to fall" for a period of three weeks was uncontroverted, it is clear that Smith's sister and her visitors were, or should have been, aware of the danger posed by the loose blocks. " 'The owner or occupier of land is under a duty to invitees to discover and either keep the premises safe from or warn of hidden dangers or defects not observable to such invitees in the exercise of ordinary care. (Cits.) However, there is no duty to warn against obvious or patent dangers which may be observed and avoided by the exercise of ordinary care. (Cits.)' [Cits.]" *Winchester,* supra, 206 Ga. App. at 142. This is true " ' " [r]egardless of the age or capacity of the injured person." ' " Id. In *Winchester* the injured child, who was younger than the child here, also did not testify. However, this court held that the undisputed testimony of the child's mother established the allegedly defective condition as "open, obvious and in plain view." Id. Here, the allegedly defective condition was observed by Smith's sister for a period of about three weeks, and was in plain view of Smith, her sister and the children for as much as half the day. Not only was this open and obvious condition in plain view, there has been no evidence presented of any superior knowledge on the part of the landlord. The trial court did not err in granting summary judgment to the Housing Authority.

*Judgment affirmed. Pope, C. J., McMurray, P. J., Birdsong, P. J., Cooper, Andrews and Johnson, JJ., concur. Beasley, P. J., and Blackburn, J., dissent.*

BEASLEY, Presiding Judge, dissenting.

The child "had the status of an invitee to whom the law requires ordinary care to be accorded." *Cooper v. Anderson,* 96 Ga. App. 800, 808 (101 SE2d 770) (1957). Thus the analysis of what he knew or should have known is different from that given his mother. However, an examination of her testimony and that of others is necessary because the child has not been deposed. There was evidence that several bricks or blocks from the wall fell on the six-year-old kindergartner and injured him while he was playing outside with other children. His mother could see some of it occurring, as she was sitting inside close to a window and was watching the children from time to time to be sure they did not go in the street. According to her, nothing was touching the wall at the time, the children were not climbing on it, they were just playing next to it, and the bricks just fell. She had not seen any defect in the wall beforehand, but she was not paying attention to it when she walked up the sidewalk to the apartment, nor was there any reason for her to do so. She knew of nothing she could have done to prevent the incident.

The child's aunt, who had lived in the apartment for about three years, knew the blocks were loose, having noticed this condition about

a week before the defendant's periodic inspection. She did not see the incident occur, and she did not think her sister saw it either. Three bricks fell. She had noticed that the whole wall appeared to be decaying, several weeks before the incident. Other children climbed on the wall, but hers did not. She had seen two of the bricks positioned about to fall, leaning a little, with gaps in the cement. The third one, underneath the other two, also fell. She called the defendant's maintenance department when there were problems inside the apartment but she did not report the loose bricks because she believes the inspectors are supposed to check outside. She did not think that the bricks would fall on the children, and she had no idea why they fell.

The defendant's director of maintenance, who oversees the inspection, repair, and maintenance of the units, stated that the last inspection of this unit was on February 1, 1991, which was approximately two months before the bricks fell (on April 7, 1991). He stated that no defect was noted and that defendant was not aware of defects in the wall, but he did not state that he personally inspected and knew that no defect was present. Nor did he state that the wall was even inspected. As to the inspection after the incident, he did not state that he conducted it and that what was found was within his personal knowledge. *Chandler v. Gately*, 119 Ga. App. 513 (1a) (167 SE2d 697) (1969).

Defendant has not shown that it did not know of the loose condition of the bricks or would not have seen it had it looked at the wall when it conducted its inspection of the premises. "Where the owner of the [premises] is shown to have made inspection of the [premises] for the purpose of discovering defects therein, [it] is chargeable with notice of any defects which should have been discovered by the exercise of ordinary care and diligence." *Home Owners Loan Corp. v. Brazzeal*, 62 Ga. App. 683, 684, 692 (6) (9 SE2d 773) (1940). Nor is there any evidence that the child saw or should have seen the loose bricks on top of the wall. The evidence does not eliminate superior knowledge, either actual or constructive, on the part of the landlord at this stage of the development of the case. See *Jackson v. Wal-Mart Stores*, 206 Ga. App. 165, 167 (2) (424 SE2d 845) (1992).

The facts in *Winchester v. Sun Valley-Atlanta Assoc.*, 206 Ga. App. 140 (424 SE2d 85) (1992), differ significantly. There the five-year-old child fell over a static brick retaining wall, which ran the entire length of one end of an open field. The wall, which was not defective, varied in height from one inch to one-and-one-half feet above the ground, and the child fell when running to retrieve a ball. The wall was open, obvious, and in plain view of the injured invitee, the child. Here the perilous condition was loose bricks or blocks on a concrete masonry screen wall, the height of which defendant has not shown. It was high enough for the neighbor's little boys to climb on to

get on top of the house. The bricks, not the child, made the movement which caused the injury. There is no evidence thus far that the child knew or should have known of the hazard in the exercise of ordinary care. Defendant as movant has not established that the defect was observable to the child playing in the yard or that the child failed to exercise ordinary care in connection with it. See *Ga. Farmers' Market Auth. v. Dabbs*, 150 Ga. App. 15, 16 (2) (256 SE2d 613) (1979), cited in *Winchester*, supra at 142.

Nor does it eliminate the element of proximate cause, the basis for the trial court's ruling. Assuming, for the sake of considering this element, that the landlord breached its duty of repair by not stabilizing or removing the loose bricks, it has not shown that this failure to act was not the proximate cause of their falling when being jarred by some normal, foreseeable means, such as someone bumping the wall or a heavy vehicle rumbling past on the street.

The grant of summary judgment was not warranted and should be reversed. *Pace v. M. E. Hunter & Assoc.*, 195 Ga. App. 23, 25 (3) (392 SE2d 545) (1990). Compare *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

I am authorized to state that Judge Blackburn joins in this dissent.

DECIDED FEBRUARY 14, 1994 —
RECONSIDERATION DENIED MARCH 18, 1994.

*Sherry J. Locklin*, for appellant.
*Fortson, Bentley & Griffin, Robert N. Elkins*, for appellee.