**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY, and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**August 21, 2015**

# In the Court of Appeals of Georgia

A15A0799. FOREST COVE APARTMENTS, LLC et al. v. WILSON.

BARNES, Presiding Judge.

Following the grant of their application for interlocutory appeal, Forest Cove Apartments, LLC and American Apartment Management Company (collectively, the "defendants") appeal the trial court's order denying their motion for summary judgment in this premises liability action brought by Teresa R. Wilson after she fell from an upstairs bathroom while performing independent contractor work for the defendants at an apartment complex. Because the uncontroverted evidence of record shows that Wilson had equal knowledge of the dangerous condition that caused her fall, we must reverse the trial court's denial of summary judgment to the defendants.

> On appeal from the denial of summary judgment[,] the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citation and punctuation omitted.) *Hood v. Todd*, 287 Ga. 164, 165 (695 SE2d 31) (2010). See OCGA § 9-11-56 (c).

So viewed, the evidence shows that the Forest Cove Apartments ("Forest Cove") is an apartment complex located in Fulton County, Georgia, that was built in the 1960s. In 2011, the managing agent for Forest Cove was the American Apartment Management Company.

That same year, Teresa Wilson owned and operated L&W Cleaning Services ("L&W"), a sole proprietorship that performed cleaning and repair services for apartment complexes, including Forest Cove. Among other things, L&W performed subfloor repairs of apartment units at Forest Cove.[1] Specifically, between January and October of 2011, Wilson and her crew repaired the subfloors of 26 Forest Cove apartments. Three of those repairs required Wilson and her crew to install new joist supports underneath the subfloors.

Apartment units at Forest Cove are federally subsidized by the United States Department of Housing and Urban Development ("HUD"). On November 8, 2011,

---

[1] A subfloor is the "rough floor over which a finished floor, flooring material, or carpet is laid." American Heritage Dictionary of the English Language (5th ed. 2011).

Wilson received a call from the property manager at Forest Cove informing her that the tenant in one of the apartment units had filed a HUD complaint regarding the condition of the unit. The tenant complained to HUD that the apartment unit had a mold problem that was making her children sick, as well as a water leak and an issue with the bathtub. The property manager requested that Wilson look at the apartment unit.

When Wilson visited the apartment unit later that day with the property manager and other apartment personnel, the unit "[reeked] of mold when you walked in there."[2] Wilson walked inside the upstairs bathroom, where she noticed that a 7-8 inch hole had rusted out of the bathtub and that the floor was sloping in one direction and felt "soft" to her. Wilson also walked into the downstairs kitchen, which was located underneath the upstairs bathroom, and noticed that the kitchen wall was swollen and "moist to the touch." There also appeared to be moisture on the kitchen ceiling.

---

[2] Our recitation of the facts surrounding Wilson's work on the apartment and the accident in question is drawn from her deposition testimony. Some of Wilson's testimony regarding the events that transpired was contradictory, and she never provided any explanation for those contradictions. Under the rule enunciated by our Supreme Court in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680) (1986), we therefore construe the contradictory testimony against Wilson in setting forth the factual background of this case.

After walking through the apartment, Wilson provided an estimate for L&W to replace the rusted bathtub in the upstairs bathroom, and the defendants accepted the proposal. Additionally, because the bathroom floor was sloping and felt soft, the defendants asked Wilson to look at the subfloor underneath the linoleum. If the subfloor was damaged, they asked Wilson to replace it. Wilson agreed to replace the subfloor if the apartment complex had the necessary materials.

The following day, Wilson's crew, under her supervision, removed the wall tile, the rusted bathtub, and the linoleum floor in the upstairs bathroom. The crew also removed the bathroom subfloor after observing that it was black and water damaged. As a result of the crew's work, the bathroom was stripped to its floor joists.

As her crew worked on the upstairs bathroom, Wilson walked downstairs and spoke with the tenant, who showed her rotten wood, water damage, and mold in the kitchen cabinets and in a kitchen closet. The tenant told Wilson that the moisture and mold problem had been ongoing for two years. Wilson saw black mold in the kitchen closet that was the "worst [she] had ever seen."

After speaking with the tenant, Wilson returned to the upstairs bathroom, where she saw what appeared to be black mold all the way down the back side of the bathroom wall that her crew had exposed by removing the wall tile. Wilson also

4

observed that the exposed floor joists, which had been hidden underneath the linoleum floor and subfloor that her crew had removed, were discolored from apparent water damage and looked "separated," "weathered," and "crumbly." According to Wilson, it was "basically rotted wood" underneath where the subfloor had been located. Wilson further noticed that someone had "Mickey Moused" a previous joist repair by using undersized lumber for some of the joists.

After observing the undersized and water-damaged floor joists, Wilson called the property manager to inform her that the condition of the bathroom was "horrendous" and involved "[a] whole different animal than [what Wilson] had expected." Wilson told the property manager, "[Y]ou guys need to come look at this because this is pretty much beyond the scope of what we were asked to do." The property manager responded by asking Wilson to "take some pictures, and send it to us, and let us know how much you will charge us to repair it." Wilson inquired if the apartment complex had the materials for repairing the floor joists, and the property manager answered in the affirmative and told Wilson to contact the apartment maintenance manager to get the materials for the repair.

Wilson was standing in the bathroom during her phone call with the property manager. When Wilson ended the call, she leaned over to photograph the wall behind

5

the sink with her smartphone. She did not look at the joist she was standing on, which then "gave way" and she fell into the downstairs kitchen onto an open hot oven, sustaining multiple injuries.

Wilson sued the defendants for the injuries she sustained in her fall from the upstairs bathroom. Following discovery, the defendants moved for summary judgment, contending, among other things, that the uncontroverted evidence showed that Wilson was an independent contractor hired to inspect and repair the bathroom and thus was in the best position to determine any existing hazard in the floor joist support system, and that Wilson had equal knowledge of the hazard. Wilson opposed the motion, arguing that there were issues of fact regarding whether the defendants should have warned her of the hazard posed by the floor joist support system and whether the defendant had superior knowledge of the hazard. The trial court denied the defendants' motion for summary judgment, but granted a certificate of immediate review. The defendants then filed an application for interlocutory appeal, which this Court granted. This appeal followed.

We conclude that the trial court erred in denying summary judgment to the defendants because the uncontroverted evidence of record shows that Wilson had equal knowledge of the hazardous condition that led to her fall. Of course, "[a]n

6

owner or occupier of land must exercise ordinary care to keep his premises safe for invitees." *Houston v. Wal-Mart Stores East, L. P.*, 324 Ga. App. 105, 107 (1) (749 SE2d 400) (2013). See OCGA § 51-3-1. But

> [t]he true ground of liability is the proprietor's *superior knowledge* of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is *known to the owner* and *not known to the person injured* that a recovery is permitted.

(Citations and punctuation omitted; emphasis in original.) *Carpenter v. Capital City Club*, 299 Ga. App. 265, 266 (683 SE2d 351) (2009). See *Amear v. Hall*, 164 Ga. App. 163, 167-168 (2) (296 SE2d 611) (1982). Where the uncontroverted evidence demonstrates that the invitee had knowledge of the dangerous condition equal to that of the premises owner, there can be no recovery by the invitee for injuries resulting from the dangerous condition. See *Houston*, 324 Ga. App. at 107-110 (1).

In this case, the evidence shows "plainly, palpably, and without dispute" that Wilson was aware of the hazardous condition of the floor joists before her fall. (Citation and punctuation omitted.) *Houston*, 324 Ga. App. at 107 (1). The defendants presented evidence that prior to her fall, Wilson had repaired the subfloors in 26 of the apartment units at Forest Cove, three of which required the installation of new joist supports underneath the subfloors. With respect to the apartment unit at issue

7

here, Wilson testified in her deposition that before her fall, she had observed that the wall and ceiling of the kitchen directly beneath the upstairs bathroom were moist; that the kitchen cabinets and closet had sustained extensive water and mold damage caused by an ongoing leak that she had assumed came from the bathroom; and that the bathroom floor was sloping and felt "soft." Wilson further testified that once her crew exposed the floor joists, she saw that the joists were discolored from apparent water damage; looked "separated," "weathered," and "crumbly"; were "basically rotted wood"; and had been repaired with undersized lumber. Even after making these observations, Wilson nevertheless continued standing on the exposed joists as she called the apartment property manager to inform her of the "horrendous" condition of the bathroom and to take the requested photographs. Given this combined uncontroverted evidence, it is clear that Wilson had at least equal knowledge of the hazardous condition of the floor joists before she fell from the upstairs bathroom.

Additionally, the evidence reflects that Wilson was an independent contractor who was hired to replace the bathtub and the damaged subfloor, and under Georgia law, "an independent contractor is expected to determine for himself whether his place of employment is safe or unsafe, and ordinarily may not recover against the owner for injuries sustained in the performance of the contract." (Citation and

8

punctuation omitted.) *Carpenter*, 299 Ga. App. at 267. See *Herrin v. Peeches Neighborhood Grill & Bar*, 235 Ga. App. 528, 532 (1) (509 SE2d 103) (1998); *Hudson v. Santangelo*, 228 Ga. App. 768, 774 (3) (492 SE2d 673) (1997). Moreover, while the general rule is that a premises owner must exercise ordinary care to keep his premises safe for workers hired to work on the premises, if the worker

> was hired for the express purpose of assisting in the repair, demolition, or alteration of some instrumentality . . . , and the unsafe conditions from which the injury resulted arose from or were incidental to the work undertaken by him, the . . . general rule is not applicable.

(Citation and punctuation omitted.) *Howell v. Farmers Peanut Market of Sowega*, 212 Ga. App. 610, 611 (1) (442 SE2d 904) (1994). Nor is the general rule applicable if the worker is hired to perform work on the premises "that in its progress necessarily changes the character for the safety of the place in which it is performed as the work progresses." (Citation and punctuation omitted.) *Elsberry v. Ivey*, 209 Ga. App. 620, 621 (2) (a) (434 SE2d 158) (1993).

Based on this precedent, as Wilson and her crew removed the damaged subfloor as part of their bathroom repair job, thereby exposing the damaged floor joists, Wilson was responsible for inspecting the work area and determining for herself whether it was safe to remain standing on the joists. See *Carpenter*, 299 Ga.

9

App. at 267; *Odister v. Leach*, 257 Ga. App. 106, 108-109 (570 SE2d 391) (2002); *Herrin*, 235 Ga. App. at 532 (1); *Hudson*, 228 Ga. App. at 774 (3). Wilson therefore cannot impose liability on the defendants for any failure on her part to fully appreciate the danger posed by the exposed floor joists. See id.

Wilson argues, however, that there was evidence that the defendants had superior knowledge of the dangerous condition of the bathroom and thus should have warned her of the risk that the joists could give way or break. Wilson relies on the deposition of Forest Cove's asset manager, who testified that she had received previous complaints about tenants falling through subfloors in the apartment complex. The asset manager did not specify, and was not asked, about the cause of the subfloor issues in those other cases, and the record contains no evidence of any other specifics about the prior incidents.

The asset manager's deposition testimony regarding prior subfloor incidents is insufficient to create a jury issue as to whether the defendants had superior knowledge of the dangerous condition of the exposed floor joists that caused Wilson's fall. For a prior incident to put a premises owner on notice of a defect, the facts must be sufficiently similar to the facts involved in the present action.

10

While the relevancy of other occurrences is ordinarily within the sound discretion of the [trial] court, it is necessary that the conditions of the things compared be substantially similar. Without a showing of substantial similarity, the evidence is irrelevant as a matter of law and there is nothing upon which the court's discretion can operate.

*Smith v. Housing Auth. of City of Athens*, 212 Ga. App. 503, 505 (441 SE2d 847) (1994). See *Wittenberg v. 450 Capitol Assoc.*, 207 Ga. App. 260, 262-263 (427 SE2d 547) (1993).

In the present case, the record contains no evidence about the circumstances surrounding the alleged prior incidents where someone fell through a subfloor, including where or when the incidents occurred or what specifically caused them. Thus, there is simply no evidence demonstrating that the prior incidents bear any rational relation to Wilson's fall while she was standing on an exposed floor joist that was water damaged due to a water leak and/or had been repaired with undersized lumber. Indeed, Wilson's crew had already removed the subfloor from the upstairs bathroom, and thus Wilson did not fall though the subfloor as allegedly occurred in the prior incidents. Under these circumstances, Wilson made no showing of substantial similarity sufficient to put the defendants on notice of any alleged defects in the bathroom floor joists before the incident in question. See *Smith*, 212 Ga. App.

11

at 505; *Wittenberg*, 207 Ga. App. at 262-263. Rather, given the lack of specificity in the evidence, a jury would simply be left to guess whether the prior incidents put the defendants on notice, and "[g]uesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment." (Citation and punctuation omitted.) *John Hewell Trucking Co. v. Brock*, 239 Ga. App. 862, 864 (522 SE2d 270) (1999).

In any event, "there is no obligation to protect the invitee against dangers or hazards which are known to him or which are so obvious and apparent he may reasonably be expected to discover them." (Citation and punctuation omitted.) *Smith*, 212 Ga. App. at 505. If the invitee knew of the danger or had equal means of knowing of the dangerous condition, the invitee cannot recover for the premise owner's failure to warn her of that danger. See *Dodd v. Clary*, 135 Ga. App. 296, 297 (217 SE2d 397) (1975). Therefore, even if the defendants knew of the potentially dangerous condition of the exposed floor joists based on prior subfloor incidents that had occurred at the apartment complex, it is clear from the record, as previously discussed, that Wilson also knew of the dangerous condition of the joists, and she cannot recover for the defendants' alleged failure to warn her of the very condition of which she was already aware. See id.

Lastly, we note that in denying summary judgment to the defendants, the trial court also found that defendants had "put[] [Wilson] in an unsafe position" by asking her to take photographs of the bathroom. But Wilson testified that she was already standing in the bathroom when she called the property manager about the condition of the bathroom and thus when the manager asked her to take the photographs.[3] Hence, Wilson had already placed herself in the dangerous position of standing on the compromised floor joists before any request was made to take the photographs and then chose to continue standing there after speaking with the property manager. And there is nothing in the record to suggest that the property manager knew that Wilson was standing on the exposed floor joists as they talked, or knew that Wilson would be standing on damaged joists to take the photographs. The record therefore does not support the trial court's finding that the defendants could be held liable for

---

[3] At a different point in her deposition, Wilson testified that she was standing outside of the bathroom when she spoke with the property manager and stepped back into the bathroom to take the requested photographs. Wilson provided no explanation for this contradiction, and her testimony provided the sole evidence of where she was standing when the photographs were taken. Accordingly, under the *Prophecy* rule, we must disregard "the favorable portions of [her] contradictory testimony and then construe the remaining testimony and evidence in favor of the [defendants] to determine whether summary judgment should be granted." (Citation and punctuation omitted.) *Price v. Thapa*, 323 Ga. App. 638, 640 (745 SE2d 311) (2013). See *Prophecy*, 256 Ga. at 28 (1).

13

placing Wilson in an unsafe position by requesting that she take the photographs of the bathroom.

For these combined reasons, we conclude that the defendants were entitled to summary judgment on Wilson's premises liability claim. The record uncontrovertedly shows that Wilson had equal knowledge of the dangerous condition of the exposed floor joists that caused her fall and thus cannot hold the defendants liable for the injuries she sustained. While we are sympathetic to Wilson, who suffered serious injuries as a result of her fall, her equal knowledge of the hazard requires us to reverse the trial court's denial of summary judgment to the defendants.

*Judgment reversed. Ray and McMillian, JJ., concur.*