A02A1424. ODISTER v. LEACH et al.
(570 SE2d 391)

MIKELL, Judge.

Dewitt Odister filed a negligence action against Ernest R. Leach and Romayne R. Leach to recover damages for injuries he sustained while cutting a tree limb on the Leaches' property. The trial court granted summary judgment to the Leaches, holding that the undisputed evidence demonstrated that Odister assumed the risk of his injuries. We agree and affirm.

Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.[1] On appeal from the trial court's ruling, our review is de novo, and we construe the evidence and all reasonable inferences and conclusions that may be drawn from it in the light most favorable to the nonmovant.[2]

So viewed, the evidence shows the following. The Leaches bought three homes in Toccoa and Lawrenceville, planning to repair and resell them. On the morning of August 29, 1998, Mr. Leach was outside of one of his Toccoa homes, working in the yard. Odister was walking down the street looking for work. He approached Leach, who agreed to let Odister pick up trash in the backyard. Odister worked for several hours.

Late in the afternoon, Leach asked Odister if he would be able to remove a large oak tree limb that was hanging over the roof of the house. Odister, who had worked for a landscape construction company for ten years in the 1960s, told Leach that he knew how to oper-

---

[33] *Weems v. State*, 269 Ga. 577, 579 (3) (501 SE2d 806) (1998).
[1] OCGA § 9-11-56 (c).
[2] *Dyer v. Honea*, 252 Ga. App. 735, 736 (1) (557 SE2d 20) (2001).

ate a chain saw. According to his deposition, Odister also told Leach that he was capable of cutting the limb while on the ladder, even though his prior experience cutting limbs did not necessitate climbing a ladder. Leach deposed that he wanted to throw a rope over the limb to pull it away from the house. Odister secured the rope around the limb. He then climbed the ladder, started the chain saw, and began cutting the limb. Leach was on the ground, holding both ends of the rope. Leach testified that he thought the limb would fall straight down. Instead, once Odister cut through it, the end of the limb that had been attached to the tree flew upward over the ladder and struck Odister in the chest, knocking him to the ground. He fractured his clavicle, a vertebra, and a rib.

Odister claimed in an affidavit that he did not know that Leach would be pulling the rope as Odister was cutting the limb. However, in his deposition, Odister testified that he was aware that two large kudzu vines were hanging from the limb's branches; that the vines, which bound the limb to another limb, would likely suspend the limb over the house; that force would have to be exerted on the limb in order to separate it from the kudzu vines and from the other limb; and that the purpose of the rope was to exert the necessary force. Moreover, Odister admitted that he saw Leach pulling the rope before Odister finished cutting the limb. Odister testified that when he saw Leach pulling the rope, "the other end was going towards Mr. Leach, but the vine was still holding it, and by the time I put my eyes back on the saw, I had cut all the way through. . . . And then before I could get anything, the limb had kicked up." Finally, in his interrogatory responses, Odister averred that "Leach grabbed both ends of the rope and was pulling it as [Odister] climbed up the tree and cut the limb while standing on the ladder." We find Odister's testimony inconsistent at best concerning his knowledge of whether Leach was pulling the rope while Odister cut the limb. As no reasonable explanation has been offered for the inconsistency, we will apply the rule set forth in *Prophecy Corp. v. Charles Rossignol, Inc.*[3] and construe the contradictory portion of his testimony against him.

The general rule is that "[a]n owner or occupier of land has a duty to exercise ordinary care to keep his premises safe for such persons, including workers who have been hired to work on the premises, as may lawfully come on the premises at the owner's expressed or implied invitation. OCGA § 51-3-1."[4] However, an exception

---

[3] 256 Ga. 27, 28 (1) (343 SE2d 680) (1986). See *Carey v. W. R. Grace & Co.*, 221 Ga. App. 728, 729 (2) (472 SE2d 524) (1996).

[4] *Howell v. Farmers Peanut Market &c.*, 212 Ga. App. 610, 611 (1) (442 SE2d 904) (1994).

applies to cases involving employees hired to do work which may be considered dangerous.

> The general rule of law, that it is the duty of the master to exercise ordinary care and diligence in providing a reasonably safe place of work for his servants, does not apply to a case where the very work for which the servant is employed is of such a nature that its progress is constantly changing the conditions as regards an increase or diminution of safety. The hazards thus arising as the work proceeds must be regarded as being the ordinary dangers of the employment, and the servant necessarily assumes them. Thus, where the injured servant was hired for the express purpose of assisting in the repair, demolition, or alteration of some instrumentality, and the unsafe conditions from which the injury resulted arose from or were incidental to the work undertaken by him, the above-stated general rule is not applicable.[5]

The plaintiff in the above-cited case was injured while cutting down a rotten post on a bridge over a railroad track. A fellow employee of the railroad was cutting another post nearby, and it fell on the plaintiff.[6] This Court held that by not waiting for the other employee to finish, the plaintiff failed to exercise ordinary care for his own safety.[7]

Similarly, in *Howell v. Farmers Peanut Market &c.*,[8] the plaintiff was injured while removing and replacing the motor from the top of a grain elevator. The motor was caught in an opening in the roof, and the employee shouted for others to stop the hoisting of the motor so he could reposition it. When the motor was raised again, it fell and struck him.[9] We held that the plaintiff could not blame the owner of the premises for his failure to inspect the motor while repositioning it.[10]

The principles utilized to resolve the foregoing cases apply equally in the case at bar. Like the plaintiff in *Howell*, Odister's "injury was received from a danger that would ordinarily and naturally exist in doing the work which he was employed to perform."[11] Odister told Leach that he had experience using a chain saw and would be able to cut the tree limb. He has only himself to blame for

---

[5] (Citation omitted.) *Louisville &c. R. Co. v. Dunn*, 21 Ga. App. 379 (94 SE 661) (1917).
[6] Id. at 381.
[7] Id. at 382-383 (2, 3).
[8] Supra.
[9] Id. at 610.
[10] Id. at 611 (2).
[11] (Punctuation omitted.) Id.

failing to communicate to Leach that he lacked experience cutting tree limbs while standing on a ladder. Given his past work experience utilizing a chain saw to cut tree limbs and the absence of evidence that Leach had any such experience, Odister cannot claim that Leach had superior knowledge of the dangers associated with the task. "The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property."[12] From his vantage point on the ladder, Odister had the opportunity to observe the kudzu vines wrapped around the limb and to assess any danger posed by Leach's actions. We hold that he assumed the risk of his injuries.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED AUGUST 20, 2002.

*Willie J. Woodruff, Jr.*, for appellant.
*Hawkins & Parnell, William H. Major III*, for appellees.

---

[12] (Citation, punctuation and emphasis omitted.) *Byrd v. Rivenbark*, 183 Ga. App. 564, 565 (359 SE2d 433) (1987).
[1] See *Swanger v. State*, 251 Ga. App. 182 (554 SE2d 207) (2001).