**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 15, 2013**

# In the Court of Appeals of Georgia

A13A0585. GLENN v. GIBBS et al.

PHIPPS, Chief Judge.

Madeira Glenn, the widow of Joel Glenn, sued homeowners Frankie and Trena Gibbs, seeking damages for the death of Joel Glenn as a result of a fall on the Gibbses' property. The trial court granted summary judgment to the Gibbses. Madeira Glenn appeals. We affirm.

To prevail on summary judgment, the moving party must show that no genuine issues of material fact remain to be tried and that the undisputed facts, viewed in the light most favorable to the nonmovant, warrant judgment as a matter of law. On summary judgment, we must construe the evidence and all reasonable inferences and conclusions that may be drawn from it most favorably to the nonmovant.[1]

---

[1] *Mosera v. Davis*, 306 Ga. App. 226 (701 SE2d 864) (2010) (footnote omitted).

So construed, the evidence showed the following. On Saturday, May 31, 2008, the Gatlin Creek Baptist Church, which both couples had attended, held a fundraiser whereby volunteers from the church helped others with yard work and other small jobs in exchange for monetary contributions to the church youth ministry. Frankie Gibbs (hereinafter "Gibbs"), who had no experience using a chainsaw, deposed that approximately two months before the fundraiser, he recalled that Joel Glenn (hereinafter "Glenn") had "done chainsaw work with the Georgia Disaster Relief," so he asked Glenn whether he would be interested in trimming some limbs on his property. Gibbs deposed that he and Glenn had not discussed any details at the time, however, and that he (Gibbs) had forgotten that he had asked Glenn about trimming the limbs until the week of the fundraiser. That week, he had seen Glenn, and Glenn asked him whether he still wanted some limbs trimmed. According to Gibbs, Glenn said that Saturday he would "have . . . boys from the youth group," and he could trim the limbs if Gibbs still wanted them trimmed. Gibbs accepted the offer, understanding that the work was being performed in exchange for a monetary donation to the youth ministry.

On Friday, Glenn went to the Gibbses' home and Gibbs showed Glenn which limbs he wanted trimmed. The next morning (Saturday), Glenn went back to the Gibbses' home with his own chainsaw and ladder, and with two youths from the church. He proceeded to trim the biggest limb Gibbs wanted trimmed. According to Gibbs, Glenn climbed the ladder and began cutting the limb with the chainsaw, and the chainsaw became lodged in the tree. Gibbs commented, "Joel, you done messed up now. . . . the saw has gotten jammed." Gibbs retrieved a pitchfork, which he used to lift the limb to dislodge the chainsaw from the tree. Afterward, Gibbs turned around and walked away to a shed to put away the pitchfork. Glenn resumed trimming the limb. As Gibbs turned back around, he saw the tree limb "flying off" and Glenn falling head first to the ground.

One of the youths Glenn had brought to assist in the tree trimming deposed as follows. Glenn climbed an A-frame ladder and began cutting the limb with a chainsaw. The chainsaw became lodged in the tree and Gibbs retrieved a pitchfork to dislodge it. After the chainsaw was dislodged, Glenn, who had climbed to the very top of the ladder, straddled the ladder – one foot on each side – "standing a little bit," and resumed cutting the limb. Suddenly, the limb snapped off and hit the top of the

ladder, knocking the ladder backward; Glenn fell forward, head first, and landed on his back.

Glenn was taken to a hospital by ambulance. He never regained consciousness and died four days later. The Gibbses had the tree removed a year and a half after the incident.

On May 28, 2010, Madeira Glenn, individually and in her representative capacity as administrator of Glenn's estate, filed a complaint against the Gibbses for damages she alleged were the "direct, substantial and proximate result of the negligent acts and omissions by [the Gibbses] resulting in injuries to Joel Lewis Glenn on May 31, 2008, at the home of [the Gibbses]." Madeira Glenn alleged that the Gibbses had breached the ordinary duty of care they owed Glenn pursuant to OCGA § 51-3-1, as an invitee upon their property.

The Gibbses moved for summary judgment, asserting that it was undisputed that at the time of the incident, Glenn's status upon their property was as an invitee, who was owed by the Gibbses a duty of care pursuant to OCGA § 51-3-1, as alleged by Madeira Glenn. The Gibbses further asserted, however, that Glenn was also an independent contractor, tasked with a duty of his own to make certain his work area was safe, take all necessary precautions, and exercise ordinary care for his own safety.

4

The Gibbses asserted that there was no evidence that Gibbs possessed superior knowledge to Glenn – the true basis of any proprietor's liability for personal injury to an invitee – as it concerned the use of ladders and chainsaws.

Madeira Glenn contends that the trial court erred in its order granting summary judgment to the Gibbses by holding that Glenn was an independent contractor, finding that Glenn possessed superior knowledge and proficiency to that of Gibbs, and holding that no material evidence had been spoiled and no prejudice had been shown by spoliation of evidence.

1. We first address Madeira Glenn's contention that the trial court erred by holding that Glenn was an independent contractor. She claims that Glenn was an invitee, and that by ruling that he was an independent contractor, the trial court placed a higher burden on Glenn, as an independent contractor is expected to determine for himself whether his place of employment is safe or unsafe. Madeira Glenn argues that the general rule regarding the duty owed to an invitee was applicable to this case.

(a) In support of her argument that Glenn was an invitee and not an independent contractor, Madeira Glenn points out that the evidence showed that Glenn was a volunteer, that he was solicited by Gibbs, that he never received any payment for the work performed, that there is a question as to whether the Gibbses

made a donation to the church for the work performed, and that Glenn did not receive any benefit from trimming the tree. These facts, she argues, show that Glenn was working at the direction of and for the benefit of the Gibbses, and was, thus, not an independent contractor. We disagree.

The test for determining whether a person employed is an employee or an independent contractor is

> whether the employer, under the contract, whether oral or written, has the right to direct the time, the manner, the methods, and the means of the execution of the work, as contradistinguished from the right to insist upon the contractor producing results according to the contract, or whether the contractor in the performance of the work contracted for is free from any control by the employer of the time, manner, and method in the performance of the work.[2]

> Where one is employed generally to perform certain services for another, and there is no specific contract to do a certain piece of work according to specifications for a stipulated sum, it is inferable that the employer has retained the right to control the manner, method and

---

[2] *Amear v. Hall*, 164 Ga. App. 163, 165-166 (1) (296 SE2d 611) (1982) (citations and punctuation omitted); *Broadnax v. Daniel Custom Constr.*, 315 Ga. App. 291, 294 (1) (726 SE2d 770) (2012).

6

means of the performance of the contract, and that the employee is not an independent contractor.[3]

After Gibbs had approached Glenn and asked him to trim limbs on his property, Glenn, two months later, offered to trim the limbs on one particular Saturday. Glenn decided what time he would trim the limbs that day. Glenn decided where to place the ladder, and never asked for Gibbs's assistance in operating the chainsaw. Gibbs had no training or experience in operating a chainsaw and did not direct Glenn in the use of the chainsaw or in positioning the ladder. Gibbs did not tell Glenn how to cut the limbs. Glenn brought his own chainsaw and ladder to trim the limbs. Aside from assisting in dislodging the chainsaw from the tree, Gibbs merely pointed out to Glenn which limbs he wanted trimmed.

The evidence showed that Glenn decided when he would trim the limbs, and the manner, method, and means of trimming the limbs; there was no evidence that Gibbs retained the right to control these factors. Under the test provided above, the evidence demanded a finding that Glenn was an independent contractor.[4]

---

[3] *Broadnax*, supra at 295-296 (1) (citation and footnote omitted); *Amear*, supra at 165 (1).

[4] See *Amear*, supra at 164-166 (1); cf *Broadnax*, supra at 294-295 (1).

7

(b) We now turn to Madeira Glenn's claims that the trial court, by ruling that Glenn was an independent contractor, placed a higher burden on Glenn because an independent contractor is expected to determine for himself whether his place of employment is safe or unsafe.[5]

> An owner or occupier of land is liable in damages to invitees who come upon his land for injuries occasioned by his failure to exercise ordinary care in keeping the premises safe. This duty requires the owner or occupier of land to exercise ordinary care for the safety of his invitees in discovering defects or danger in the premises and imposes liability for injuries resulting from such defects as a reasonable inspection would disclose. Under this principle is found the duty of an owner of premises to an individual contractor . . . who lawfully come[s] upon the premises in the performance of a contract between the owner and the contractor because the independent contractor . . . [is an] invitee[]. Thus, an owner having work done on his premises by an independent contractor, who has actual or constructive knowledge of potential dangers on the premises, owes a duty to the contractor to give warning of, or use ordinary care to furnish protection against, such dangers to the contractor and his employees who are without actual or constructive

_____

[5] See *Amear,* supra at 167 (2) ("An individual contractor is expected to determine for himself whether his place of employment is safe or unsafe. . . .")

8

notice of the dangers, and which could not be discovered by them in the exercise of ordinary care.[6]

But an *invitee* must also "exercise ordinary care for his own safety and must by the same degree of care avoid the effect of the owner or occupier's negligence when it becomes apparent to him, or in the exercise of ordinary care should have learned of it."[7] The trial court did not expressly rule that Glenn's status upon the premises was *not* as an invitee. And based on the foregoing, the trial court's conclusion that Glenn was an independent contractor did not preclude his status as an invitee. Legal authority concerning Glenn's status as an invitee was pertinent to this case, and, in fact, *was* applied by the trial court in its ruling.

In *Odister v. Leach*,[8] which the trial court cited in its order granting summary judgment, a homeowner employed a passerby who was walking down the street

---

[6] *Amear*, supra at 166 (2) (citations omitted); OCGA § 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.").

[7] *Schuessler v. Bennett*, 287 Ga. App. 880, 884 (1) (652 SE2d 884) (2007) (footnote omitted); *Amear*, supra at 167 (2).

[8] 257 Ga. App. 106 (570 SE2d 391) (2002).

9

looking for work, to pick up trash in the backyard of his home.[9] Later, the homeowner asked the passerby whether he would be able to remove a large tree limb that was hanging over the roof of the house.[10] The passerby had worked for a landscape construction company for ten years and told the homeowner that he knew how to operate a chainsaw.[11] The passerby deposed that he had also told the homeowner that he was capable of cutting the limb while on a ladder, even though his prior experience cutting limbs did not necessitate climbing a ladder.[12] At the homeowner's request, the passerby secured a rope around the limb so that the homeowner could pull the limb away from the house.[13] The passerby climbed the ladder, started the chainsaw, and began cutting the limb, while the homeowner remained on the ground, holding the rope. The homeowner testified that he thought the limb would fall straight down; but instead, once the passerby cut through it, the end of the limb that had been attached

---

[9] Id. at 106.

[10] Id.

[11] Id. at 106-107.

[12] Id. at 107.

[13] Id.

10

to the tree flew upward over the ladder and struck the passerby in the chest, knocking him to the ground. The passerby suffered fractured bones.[14]

In determining the propriety of the trial court's grant of summary judgment to the homeowner on the basis that the passerby assumed the risk of his injuries, this court first recognized the general rule concerning the duty of an owner or occupier of land to an invitee, found in OCGA § 51-3-1:[15] "Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."

The court then recognized and applied an exception pertinent to cases involving workers employed to do work which may be considered dangerous.[16]

> The general rule of law, that it is the duty of the master to exercise ordinary care and diligence in providing a reasonably safe place of work for his servants, does not apply to a case where the very work for which the servant is employed is of such a nature that its progress is constantly

---

[14] Id.

[15] Id.

[16] Id. at 107-108.

11

changing the conditions as regards an increase or diminution of safety. The hazards thus arising as the work proceeds must be regarded as being the ordinary dangers of the employment, and the servant necessarily assumes them. Thus, where the injured servant was [employed] for the express purpose of assisting in the repair, demolition, or alteration of some instrumentality, and the unsafe conditions from which the injury resulted arose from or were incidental to the work undertaken by him, the above-stated general rule is not applicable.[17]

Likewise, this case concerned whether Glenn assumed the risk of his injuries based on the ordinary dangers attendant with the task he was employed to perform; not whether Glenn was erroneously saddled with an expectation of determining whether the Gibbses' premises were safe or unsafe.[18] Accordingly, there is no merit in Madeira Glenn's claim that the trial court's ruling placed a higher burden on Glenn than he would otherwise have had if the court had not determined that he was an independent contractor.

---

[17] Id. at 108 (footnote omitted); *Carter v. Country Club of Roswell*, 307 Ga. App. 342, 345 (705 SE2d 170) (2010).

[18] See *Odister*, supra at 108-109; *Elsberry v. Ivey*, 209 Ga. App. 620, 621-622 (2) (a), (b), (c) (434 SE2d 158) (1993).

2. Madeira Glenn contends that the trial court erred in its order granting summary judgment by finding that Glenn's knowledge and proficiency were superior to Gibbs's.

Specifically, she claims,

It is of no consequence that Mr. Glenn was more experienced (i.e. had 'superior knowledge') with the use of ladders and chainsaws. Neither the ladder nor the chainsaw caused the fall. The falling tree limb caused the fall. Thus, even if Mr. Glenn was aware that limbs fall in the course of trimming trees, Defendant Gibbs had a duty to warn him of the dangers and/or to assist him once Mr. Gibbs became aware that there was a problem with the limb or noticed problems with Mr. Glenn's trimming of the limbs. . . . From Mr. Gibbs' vantage point of both seeing the problem with the limb and how is (sic) was coming down and from his own knowledge of having to lift the limb with a pitchfork, Defendant Gibbs, at that point had superior knowledge, or at least equal knowledge, to Mr. Glenn and had a duty at that point to warn Mr. Glenn.

Madeira Glenn claims that Gibbs's superior knowledge was evidenced by his comment to Glenn that he (Glenn) had messed up, and by Gibbs's taking affirmative steps to assist Glenn by retrieving the pitchfork and lifting the limb to dislodge the chainsaw.

"The true ground of premises liability is a landowner's superior knowledge of [a] perilous condition and the danger therefrom to persons coming upon the property; it is when the perilous condition is known to the owner and not known to the person injured that a recovery is permitted."[19] "In order for [the Gibbses] to prevail on summary judgment, [they] had the burden to negate the existence of superior knowledge on [their] part, with all doubts and conflicts being resolved in plaintiff's favor."[20]

Madeira Glenn claims that Gibbs had a duty to warn Glenn of dangers and/or to assist Glenn once Gibbs became aware that there was a problem with the limb or noticed problems with Glenn's trimming of the limbs. But the undisputed evidence showed that the only problem Gibbs noticed was that the chainsaw had become lodged in the tree. When that occurred, Gibbs did assist Glenn in dislodging the chainsaw. Gibbs deposed that his comment to Glenn, that he (Glenn) had "messed up," was a reference to the chainsaw becoming lodged in the tree.

---

[19] *Wimpey v. Otts*, 207 Ga. App. 40, 42 (427 SE2d 34) (1993) (citations omitted).

[20] *Lee v. Myers*, 189 Ga. App. 87, 89-90 (2) (374 SE2d 797) (1988) (citations omitted).

14

And although Madeira Glenn claims that Gibbs had a certain "vantage point of both seeing the problem with the limb and how is (sic) was coming down and from his own knowledge of having to lift the limb with a pitchfork," there was no evidence of this. Gibbs deposed that after he had dislodged the chainsaw, he turned and walked away to put away the pitchfork, and Glenn resumed trimming the limb, which fell just as he (Gibbs) had turned back around. There was no evidence that immediately after the chainsaw was dislodged, there was a problem with the limb, the limb began to fall, Gibbs observed a problem with the limb, or Gibbs noticed that the limb began to fall.

The evidence showed that Gibbs's knowledge was not superior to Glenn's. Gibbs deposed that he did not own a chainsaw or a ladder; that he had minimal experience climbing ladders; that he knew that Glenn had received training on the use of a chainsaw; that Glenn seemed to be a safe operator of a chainsaw; that on the day of the incident, he felt as though Glenn was operating the chainsaw in a safe manner; and that on the day of the incident, he did not see Glenn maneuver either the chainsaw or the ladder in any way that caused him concern.

Glenn's "injury was received from a danger that would ordinarily and naturally exist in doing the work which he was employed to perform."[21] Glenn was known to have had training and experience using a chainsaw and ladders, which, according to Madeira Glenn, included how to "lay a tree." After being asked by Gibbs to trim tree limbs, Glenn subsequently offered to trim the limbs for Gibbs, and arrived at Gibbs's home with his own chainsaw and ladder to perform the job, which he had surveyed the evening before. After the chainsaw was stuck and subsequently dislodged from the tree, Glenn, on his own, and without any request for assistance (other then having asked the youths in the beginning to watch the ladder), resumed cutting the limb. The limb then snapped off, knocking the ladder and Glenn to the ground. Given Glenn's past training and experience utilizing a chainsaw, and evidence that Gibbs had no such training and experience, Madeira Glenn cannot claim that Gibbs had superior knowledge of the dangers associated with the task.[22] Indeed, she conceded that Glenn's knowledge was superior to Gibbs's; as she stated in her appellate brief, "It is of no consequence that Mr. Glenn was more experienced (i.e. had 'superior knowledge') with the use of ladders and chainsaws."

---

[21] *Odister*, supra at 108 (punctuation and footnote omitted).

[22] See *Odister*, supra at 108-109.

16

Furthermore, the youth deposed that when the limb broke away from the tree, it did so suddenly. "One is not bound to anticipate or foresee and provide against that which is unusual or that which is only remotely and slightly probable."[23] The evidence showed that Glenn assumed the risk of his injuries.[24]

---

[23] *Byrd v. Rivenbark*, 183 Ga. App. 564, 566 (359 SE2d 433) (1987) (citation and punctuation omitted).

[24] See *Odister*, supra at 109; *Howell v. Farmers Peanut Market*, 212 Ga. App. 610-611 (1), (2) (442 SE2d 904) (1994) (grant of summary judgment to proprietor affirmed where individual employed to replace a motor from the top of an elevator was injured attempting to perform task; held, individual had opportunity to assess any potential dangers before resuming task and injury was received from a danger that would ordinarily and naturally exist in doing the work which he was employed to perform); *Elsberry*, supra (grant of summary judgment to homeowner affirmed where handyman employed to remove shingles from roof of house was injured when shingles slid, causing him to fall from roof; held, handyman assumed the ordinary risk of working on the roof of an old house and his injury arose from dangers that "ordinarily and naturally exist in doing the work" for which he was employed); *Beard v. Fender*, 179 Ga. App. 465-466 (346 SE2d 901) (1986) (reversing denial of motion for directed verdict to property owner where volunteer neighbor's knowledge of the danger associated with clearing a wasps' nest was equal to that of property owner's); *Dodd v. Clary*, 135 Ga. App. 296-297 (217 SE2d 397) (1975) (grant of summary judgment to employer reversed where individual employed to assist in cutting down tree was killed by large limb that fell from tree being cut down; although evidence did not show whether employee knew that limb was rotten, evidence showed that employee had equal means with employer to know of the danger).

17

Relying, in part, on *Clark v. Carla Gay Dress Co.*,[25] Madeira Glenn asserts that in this case a "straightforward foreseeability analysis, as opposed to the more restrictive superior knowledge rule" should be applied because this case fell in the category of cases where "the plaintiff has knowledge of a defect but not necessarily of the danger posed thereby or situations involving inherently dangerous instrumentalities or actively dangerous individuals." That case, however, is inapplicable; it concerned a proprietor's alleged breach of his duty to keep the premises safe based on the proprietor's failure to protect the invitee from acts and consequences of the acts of a *third party* which the invitee herself was powerless to prevent by ordinary care.[26] It is in that context that this court determined that "[t]he true basis of liability in *such a case* is the foreseeability of the consequences by the proprietor, which consequences the plaintiff could not avoid with use of ordinary care."[27] Those facts do not present themselves here. Moreover, as previously shown, Madeira Glenn's contention was based on facts not supported by the record.

---

[25] 178 Ga. App. 157 (342 SE2d 468) (1986).

[26] Id. at 160-161.

[27] Id. (citation and emphasis omitted; emphasis supplied).

18

3. Madeira Glenn contends that the trial court erred by holding that no material evidence had been spoiled and no prejudice had been shown by spoliation of evidence. Based on our conclusions in Divisions 1 and 2,[28] we need not address this issue.

*Judgment affirmed. Ellington, P. J., concurs. Branch, J., concurs in Divisions 2 and 3 and concurs in the judgment only as to Division 1.*

---

[28] Supra.