**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 4, 2015**

# In the Court of Appeals of Georgia

A15A0943. FITZPATRICK v. HYATT CORPORATION.

McFADDEN, Judge.

Kimberly Fitzpatrick filed this premises liability action to recover for injuries she sustained when she fell off a stage at a conference she was attending at the Hyatt Regency in Savannah. The trial court granted Hyatt summary judgment. On appeal, Fitzpatrick argues that whether Hyatt knew of the stage's unsafe configuration and whether Fitzpatrick exercised ordinary care for her own safety are questions of fact that preclude summary judgment. She also argues that the trial court erred in applying a "heightened sense of awareness" standard of care. Finally she argues that the trial court erred by failing to consider whether Hyatt had a duty to install railings or other safety measures when assembling the stage. We agree with Fitzpatrick that whether Hyatt knew of the stage's unsafe configuration and whether Fitzpatrick exercised

ordinary care for her own safety are fact questions. Accordingly, we reverse Hyatt's grant of summary judgment. We reject Fitzpatrick's other arguments.

1. *Facts.*

In order to survive a defendant's summary judgment motion,

> a plaintiff must come forward with evidence that, viewed in the most favorable light, would enable a rational trier of fact to find that the defendant had actual or constructive knowledge of the hazard. At that point, the burden of production shifts to the defendant to produce evidence that the plaintiff's injury was caused by his or her own voluntary negligence (intentional disregard of a known risk) or causal negligence (failure to exercise ordinary care for one's personal safety). If the defendant succeeds in doing so, the burden of production shifts back to the plaintiff to come forward with evidence that creates a genuine dispute of fact on the question of voluntary or causal negligence by the plaintiff or tends to show that any such negligence resulted from the defendant's own actions or conditions under the defendant's control.

*American Multi-Cinema v. Brown*, 285 Ga. 442, 444-445 (2) (679 SE2d 25) (2009). (citation omitted).

Viewed in a light most favorable to Fitzpatrick, the evidence shows that she injured herself while attending a conference of the Southern Early Childhood Association at the Hyatt Regency in Savannah. One of the sessions at the conference

2

featured an entertainer, Don Monopoli, who invited audience members up on the stage. Fitzpatrick volunteered and climbed the stage. She was listening to the entertainer, facing outward toward the audience, when another woman began to leave the stage. Fitzpatrick stepped back to allow the other woman to pass and fell off the stage, injuring her neck and upper back.

The stage was two feet high. At the time of Fitzpatrick's fall, the stage was configured as a rectangle with a rectangular-shaped area cut out of the back corner. Fitzpatrick was standing directly in front of the cutout section and fell when she stepped backward into the area where there was no stage. Marquis Dillard, the Hyatt's banquet manager, and other Hyatt employees assembled the stage in the hotel ballroom using components called risers. They set up the stage as a rectangle using the modular risers. At some point, Don Monopoli, the entertainer, asked to have the stage split into two smaller stages, and Dillard did so. But Dillard testified that he did not configure the stage to have the cutout section in the back. He also testified that as banquet manager, he would have been notified had another Hyatt employee changed the configuration, but he was never alerted that any changes had been made. When shown a drawing of the stage as described by Fitzpatrick – the rectangle with the rectangular cutout – he testified that it was possible to configure the stage into

3

that shape, but they would never configure a stage to leave a gap in the back because it was unsafe; they always squared off the risers to be even on all sides. Monopoli, the entertainer, did not remember how the stage was configured, but he did not personally change the configuration nor did he recall whether he asked anyone to change it.

2. *Questions of fact.*

To recover for injuries sustained in a fall, "[t]he plaintiff must plead and prove that: (1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control." *American Multi-Cinema v. Brown*, 285 Ga. at 444 (2).

(a) *Hyatt's knowledge.*

Hyatt argues that the evidence establishes that it did not have superior knowledge of the hazardous configuration because it did not set up the stage in the configuration alleged by Fitzpatrick. It relies on the testimony of Dillard, the banquet manager, that he did not construct the stage in its unsafe configuration and that he would have been notified had another Hyatt employee done so. That evidence goes to Hyatt's actual knowledge of the hazard, and Fitzpatrick has not come forward with direct evidence to create a fact question on the issue of Hyatt's actual knowledge.

4

However, Fitzpatrick has presented some evidence from which a factfinder could conclude that Hyatt had constructive knowledge of the hazard.

> To show Hyatt's constructive knowledge, Fitzpatrick could
>
> show[ either] that an employee was positioned in the immediate vicinity and had the opportunity and means to discover and remove the hazard . . . [or] that the alleged hazard was present for such a length of time that it would have been discovered had the proprietor exercised reasonable care in inspecting the premises.

*Osman v. Olde Plantation Apartments*, 270 Ga. App. 627, 631 (1) (607 SE2d 236) (2004) (citation and punctuation omitted).

Here, Dillard's uncontradicted testimony established that he did not configure the stage to have the cutout section in the back. But it is likewise undisputed that at the time of Fitzpatrick's fall, the stage was configured as a rectangle with a rectangular-shaped area cut out of the back corner. Hyatt, through Dillard's testimony, acknowledged that this configuration was unsafe. There is no evidence explaining who reconfigured the stage or when it was reconfigured. Fitzpatrick presented evidence that Hyatt employees set up the sound system on the stage and that she fell after the session had begun, after Monopoli had sung several songs, after the volunteers had sung, and after Monopoli had begun telling a story, all while the

5

stage was set up in the hazardous configuration. From this evidence a factfinder could conclude that Hyatt had the means and opportunity to discover and remedy the hazardous configuration, or would have discovered the hazardous configuration had it exercised reasonable care in inspecting the premises and stage. See *Smith v. Tenet HealthSystem Spalding*, 327 Ga. App. 878, 881 (2) (761 SE2d 409) (2014). Hyatt, as the movant on summary judgment, failed to negate this theory of liability. See *Thompson v. Regency Mall Assoc.*, 209 Ga. App. 1, 4 (1) (432 SE2d 230) (1993).

(b) *Fitzpatrick's exercise of reasonable care for her own safety*.

Fitzpatrick argues that whether she exercised reasonable care for her own safety is a question for jury resolution. We agree. "[H]ow vigilant patrons must be for their own safety in various settings, and where customers should be held responsible for looking or not looking are all questions that, in general, must be answered by juries as a matter of fact rather than by judges as a matter of law." *American Mutli-Cinema*, 285 Ga. at 445 (2).

Fitzpatrick testified that it was possible that had she looked "way back to [her] left," she might have seen the cutout section through which she fell, but on the stage was a table with musical equipment that blocked her peripheral view to her left. Had she looked to her right, she would not have seen the cutout section because there was

6

no cutout section on that side; instead the stage extended back on her right. Fitzpatrick testified that had she turned around 180 degrees and faced the back of the stage, "it [was] possible that more than likely [she] would [have seen] that the stage was not there." Whether the exercise of reasonable care required Fitzpatrick to turn around 180 degrees before she moved out of the way of another person leaving the stage is a question for resolution by the factfinder.

The cases cited by Hyatt are distinguishable. In *Keister v. Creative Arts Guild*, 139 Ga. App. 67 (227 SE2d 880) (1976), we affirmed the grant of summary judgment to a defendant when the plaintiff stepped backwards and fell off an elevated stage or platform at an art exhibit. In *Herschel McDaniel Funeral Home v. Hines*, 124 Ga. App. 47 (183 SE2d 7) (1971), we reversed the denial of the defendant's motion for summary judgment. There, the plaintiff was injured when she entered an altar area of a funeral home chapel from a side door, stepped backward to see some flowers better, and fell to the chapel floor six inches below. Neither *Keister* nor *Herschel McDaniel* involved an admittedly hazardous condition as does the instant case.

But we reject Fitzpatrick's argument that the trial court erroneously imposed a heightened duty of care upon her. In its summary judgment order, the trial court wrote, "Common sense dictates a heightened sense of awareness of a potential hazard

7

when a person is standing on a raised platform." That observation is unexceptionable. As noted above, whether Fitzpatrick exercised reasonable care for her own safety is an issue for the factfinder.

3. *Hyatt's failure to install safety railings*.

We agree with Hyatt that Fitzpatrick has not shown that Hyatt had a duty to install safety railings. See *Keister*, 139 Ga. App. at 67.

*Judgment reversed. Ellington, P. J., and Dillard, J., concur*.