**FIFTH DIVISION
MERCIER, C. J.,
MCFADDEN, P. J., and RICKMAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 29, 2024**

# In the Court of Appeals of Georgia

A24A0886. COOK v. SMG CONSTRUCTION SERVICES, LLC.

McFADDEN, Presiding Judge.

Daniel Cook was injured in a fall from an unprotected balcony while installing cabinetry in a house that was under construction. He sought to recover against the owner of the house, SMG Construction Services, LLC, for premises liability, but the trial court granted summary judgment in SMG's favor.

In his deposition, Cook admitted that he had been aware of the unprotected balcony, but explained that because of the combined effect of "the drywall dust, the overspray and the cloudy day" he "thought it was further back than it was." Whether to credit that explanation is a jury question. So we reverse.[1]

---

[1] Oral argument was held in this case on May 8, 2024, and is archived on the court's website. See Court of Appeals of Georgia, Oral Argument, Case No.

1. *Facts*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). We review the grant or denial of summary judgment de novo, "view[ing] the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) (citation and punctuation omitted).

So viewed, the evidence showed that SMG owned the property at issue and was in the process of constructing a house on it. Cook performed cabinetry work for a subcontractor on the construction project.

On Monday, December 20, 2021, the subcontractor sent Cook to install kitchen and bathroom cabinetry in the house. After Cook arrived at the worksite early that morning, he carried tools and materials into the house and took measurements, which required him to walk up and down the stairs to the second floor several times.

A24A0886 (May 8, 2024), available at http://vimeo.com/944693847.

The house had an interior balcony on its second floor that overlooked the entry foyer. A temporary guardrail had been removed from the balcony so that sheetrock work could be performed. Typically, after the sheetrock work was completed, a permanent rail would be installed as part of the process of installing trim. In this case, the sheetrock work was completed the end of the week before Cook arrived at the house, and the trim was scheduled to be installed on the same day that Cook was installing cabinetry.

Before Cook began his work, SMG's owner briefly visited the job site and spoke with him. While the owner was there, he learned that the trim work would not be done that day.

Cook was aware that there was no guardrail on the second-floor balcony. But the balcony edge was not in the immediate area where Cook was working. And he did not realize how close it was to his work area because it was a cloudy day, there was no artificial lighting in the area, there was drywall dust and overspray on the floor, and the color of the balcony edge was not distinct from the color of the opposing wall.

Cook needed to unkink an air hose to perform his work on one of the second-floor bathrooms. Holding the hose, he began to "shuffle" backward across the floor

outside the bathroom. Not realizing his proximity to the unguarded balcony edge, he stepped off of it and fell to the first floor, badly injuring himself.

2. *Analysis*

Because Cook was working for SMG's subcontractor, he "was an invitee to whom [SMG] owed a duty under OCGA § 51-3-1 to use ordinary care to keep the premises safe." *Ferguson v. Premier Homes*, 303 Ga. App. 614, 615 n. 1 (695 SE2d 56) (2010). Under that Code section, "[w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1.

We analyze this case under the well-established body of law applicable to slip-and-fall or trip-and-fall actions. "[T]o recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (2) (b) (493 SE2d 403) (1997).

Because SMG does not claim that it lacked knowledge of the hazard in this case, we consider only the second prong of the *Robinson* test: whether a genuine issue of material fact exists as to whether Cook "intentionally and unreasonably exposed [him]self to a hazard of which [he] knew or, in the exercise of ordinary care, should have known." *Robinson*, 268 Ga. at 749 (2) (b). As Justice Pinson has explained, an invitee cannot recover if she "either (a) knew about the hazard and intentionally disregarded it, or (b) could have discovered and avoided the hazard if she had exercised ordinary care for her own safety. . . ." *Givens v. Coral Hospitality–GA*, 317 Ga. 282 (892 SE2d 782) (2023) (Pinson, J., concurring) (citing *American Multi-Cinema v. Brown*, 285 Ga. 442, 445 (2) (679 SE2d 25) (2009)). In considering this question we must keep in mind "that the 'routine' issues of premises liability, i. e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed." *Robinson*, 268 Ga. at 748 (2) (b).

The hazard in this case was a static condition. See *Crebs v. Bass Pro Outdoor World*, 360 Ga. App. 121, 123 n. 2 (860 SE2d 802) (2021) ("A static condition is one

that does not change and is dangerous only if someone fails to see it and walks into it.") (citation and punctuation omitted). In such cases, if an invitee "has as much knowledge [of the condition or hazard] as the [premises owner] does[ and i]f nothing obstructs the invitee's ability to see the static condition, the [owner] may safely assume that the invitee will see it and will realize any associated risks." Id. at 123 (citation, punctuation, and emphasis omitted).

But it is the invitee's "knowledge of the *specific* hazard which precipitates the injury which is determinative, not merely [his] knowledge of the generally prevailing hazardous conditions or of the hazardous conditions which [he] observes and avoids." *Johnson Street Properties v. Clure*, 302 Ga. 51, 56 (1) (a) (iii) (805 SE2d 60) (2017) (citation and punctuation omitted; emphasis supplied). Accord *Sanderson Farms v. Atkins*, 310 Ga. App. 423, 428 (2) (713 SE2d 483) (2011); *Jackson v. Waffle House*, 245 Ga. App. 371, 374 (2) (537 SE2d 188) (2000). "[W]e have, on numerous occasions, reversed the grant of summary judgment to a defendant when the record did not clearly substantiate that the plaintiff had successfully negotiated the hazard[,]" for example, because the specific hazard had not been visible to the plaintiff. *Barton v. City of Rome*, 271 Ga. App. 858, 861 (610 SE2d 566) (2005).

6

SMG argues that there is evidence of Cook's actual knowledge that the second flood balcony did not have a guardrail. Cook does not dispute that point, but he argues that his knowledge only extended to a generally prevailing hazard, that there was an unguarded balcony in the house. He argues that a genuine issue of material fact exists as to whether the conditions at the time of his fall — the poor lighting, drywall dust and overspray, and lack of visual delineation between the balcony edge and the facing wall — created an optical illusion that camouflaged the closeness of the balcony edge to his work area and prevented him from perceiving the risk it posed to him.

There is Georgia authority that supports Cook's argument. For example, in *Strauss v. City of Lilburn*, 329 Ga. App. 361, 362 (765 SE2d 49) (2014), the plaintiff fell when she "just didn't see" a single step leading down to a sidewalk outside a restaurant. The plaintiff had actual knowledge that "there was a step in the area" but she had not actually traversed that step before her fall. Id. at 364. Nevertheless, we reversed a grant of summary judgment to the city that owned the sidewalk because there was evidence that conditions, including the lack of "delineation of the step[,]" served to camouflage the specific hazard from the plaintiff's vantage point. Id. at 362-365. We concluded that whether the plaintiff "exercised ordinary care for her own

7

safety and whether she had greater or equal knowledge of the specific hazard posed by the single-step riser [were] questions of fact to be resolved at trial." Id. at 364.

Similarly, in *Myers v. Harris*, 257 Ga. App. 286 (570 SE2d 600) (2002), the plaintiff, a thrift store shopper, walked "up a concrete ramp without handrails to an elevated furniture showroom." She then "walk[ed] between pieces of the tightly packed furniture to examine a table and chairs displayed on the concrete ledge adjacent to the ramp." Id. The ledge was unguarded, and the plaintiff "stepped back and suddenly fell off the ledge, onto and down the ramp she had just traversed, injuring her foot, ankle, and elbow." Id. at 286-287. She sued the thrift store proprietor, alleging that it had "failed to properly warn her of the dangers of the ramp and adjoining ledge[,]" and she argued on appeal that given the conditions "it was difficult to determine where the edge of the ledge ended." Id. at 287-288 (1). There was evidence that the plaintiff "did not see where the floor ended" because her ability to see that edge was obstructed or impaired. Id. at 287 (1). And although there was evidence that the plaintiff had some knowledge of the hazard, she had not previously traversed it. Id. at 287-288 (1). Noting that under *Robinson v. Kroger*, supra, an invitee is not required to continuously survey the floor for defects, we held that questions of

fact existed as to the plaintiff's knowledge of the specific hazard and whether she exercised reasonable care, "[e]ven though as she ascended the ramp, [the plaintiff] could have seen the edge of the elevated showroom." Id. at 288 (1).

We are persuaded by these decisions. Like the plaintiffs in *Strauss* and *Myers*, Cook knew there was a static hazard nearby, but there is evidence that existing conditions affected his ability to perceive its exact location and appreciate the specific risk it posed to him.

We acknowledge that, in his deposition, Cook stated that he "could see where it dropped off" as evidence that Cook had actual knowledge of the location of the unprotected balcony edge in relation to his work area. But Cook made that statement in the midst of a larger discussion about how he did *not* know the exact location of the balcony edge because the conditions at the time obscured his view:

Q. But going up the stairs facing that area you saw that it was an open area, correct?

A. Yes and no.

Q. Yes, and how did you see that as an open area?

A. I could see where it dropped off, but as I explained already, the drywall dust, the overspray and the cloudy day all kind of blended it together. So, *I thought it was further back than it was.*

(Emphasis supplied.) Later in his testimony, Cook reiterated that because of the conditions, he "thought it was further away from where [he] was."

We cannot disregard Cook's testimony that he did not accurately perceive the location of the unguarded balcony edge. Instead we must construe that testimony in Cook's favor and find, for purposes of summary judgment, that he lacked actual, specific knowledge of the location of that edge.

Likewise, the evidence that Cook made several trips up and down the stairs to the second-floor bathrooms does not compel a finding that Cook had constructive knowledge of the hazard. There is no evidence that Cook ever "traversed" the specific hazard in this case — the unguarded balcony edge. Instead, there is evidence that Cook walked near it as he carried materials and supplies to the bathrooms, which he testified were not in the "immediate" area of the balcony edge.

Certainly, a finder of fact may find unbelievable Cook's testimony that he did not know the exact location of the balcony edge, or may disagree with Cook that it was outside his immediate work area, or may conclude that Cook failed to exercise

10

reasonable care when he decided to walk backward across the balcony without first ascertaining exactly where it ended. But these are questions for the finder of fact to determine, not the trial court and not this court. So we find that jury questions exist as to whether Cook's knowledge of the specific hazard, namely the proximity of the balcony's edge to the area on the second floor where he was working, was equal to or greater than SMG's, and whether he exercised ordinary care for his own safety under the circumstances. See *Strauss*, 329 Ga. App. at 365; *Myers*, 257 Ga. App. at 287-288 (1). See also *Simon v. Murphy*, 350 Ga. App. 291, 294-295 (1) (829 SE2d 380) (2019) (plaintiff's general knowledge that a shopping cart corral had a damaged crossbar did not entitle the defendant store to summary judgment where a factual question existed as to the plaintiff's specific knowledge of the danger created by an elevated section of the crossbar); *Pinder v. H & H Food Svcs.*, 326 Ga. App. 493, 502 (3) n. 9 (756 SE2d 721) (2014) (plaintiff's testimony that an optical illusion concealed a hazardous condition created a question of fact as to whether she could have detected the condition) (physical precedent only); *Fitzpatrick v. Hyatt Corp.*, 335 Ga. App. 203, 207 (2) (b) (779 SE2d 110) (2015) (jury question existed as to plaintiff's exercise of reasonable care when she stepped backward without looking and fell off an unsafely

11

configured stage); *Hagadorn v. Prudential Ins. Co.*, 267 Ga. App. 143, 145-147 (598 SE2d 865) (2004) (jury questions existed as to plaintiff's superior knowledge of hazard caused by a drainage culvert, as well as her exercise of ordinary care, where the conditions created an optical illusion that prevented the plaintiff from appreciating the danger involved). Compare *Crebs*, 360 Ga. App. at 123-124 (where the evidence showed that the plaintiff store patron earlier had observed a display fence protruding into an aisle and there was "no dispute that the fencing was visible, that there was sufficient lighting, and that the fencing did not blend into its surroundings[,]" then as a matter of law it was an open and obvious static condition about which the plaintiff had equal knowledge, entitling the store to summary judgment); *Scott v. Forest Acres Full Gospel Church*, 352 Ga. App. 145, 149-151 (1) (834 SE2d 286) (2019) (there was no genuine issue of fact as to the plaintiff's superior knowledge of the hazard or his failure to exercise ordinary care, and so the defendant was entitled to summary judgment, where the plaintiff walked on a building roof despite knowing that there were unguarded skylights and knowing that, once he was on the roof, he would not be able to tell where they were); *Forest Cove Apts. v. Wilson*, 333 Ga. App. 731, 735 (776 SE2d 664) (2015) (as a matter of law, a contractor hired to replace a bathtub and

12

damaged subfloor in an apartment had equal knowledge of the hazardous conditions of the exposed floor joists, which broke as she was standing on them after observing their hazardous condition).

Finally, we are not persuaded by SMG's argument that a different legal standard than OCGA § 51-3-1 applies because Cook was an independent contractor. "[A]n independent contractor is expected to determine for himself whether his place of employment is safe or unsafe, and ordinarily may not recover against the owner for injuries sustained in the performance of the contract." *Forest Cove Apts.*, 333 Ga. App. at 735 (citation and punctuation omitted). See also *Young v. Richards Homes*, 271 Ga. App. 382 (1) (609 SE2d 729) (2005). Nevertheless, an independent contractor is still an invitee for purposes of premises liability under OCGA § 51-3-1. See *Schuessler v. Bennett*, 287 Ga. App. 880, 883-885 (1) (652 SE2d 884) (2007). See also *Glenn v. Gibbs*, 323 Ga. App. 18, 22 (1) (b) (746 SE2d 658 (2013) (physical precedent only). Cook does not fall into the exceptions to OCGA § 51-3-1 that arise when an independent contractor is "employed to do work which may be considered dangerous[,]" *Glenn*, supra at 23 (1) (b), either because the contractor

> was hired for the express purpose of assisting in the repair, demolition,
> or alteration of some instrumentality and the unsafe conditions from

which the injury resulted arose from or were incidental to the work undertaken by him, [or where the contractor was] hired to perform work on the premises that in its progress necessarily changes the character for safety of the place in which it is performed as the work progresses.

*Forest Cove Apts.*, 333 Ga. App. at 735-736 (citations and punctuation omitted). The work for which Cook was hired — installation of bathroom and kitchen cabinetry — fits neither of these categories. Compare *Odister v. Leach*, 257 Ga. App. 106, 108-109 (570 SE2d 391) (2002) (exception to OCGA § 51-3-1 applied where plaintiff's "injury was received from a danger that would ordinarily and naturally exist in doing the work which he was employed to perform") (citation and punctuation omitted).

For these reasons, we reverse the grant of summary judgment to SMG.

*Judgment reversed. Mercier, C. J., and Rickman, J., concur.*